JAMES TITUS et al., Appellees, v. JAMES SHERWOOD, as President of the State Association of Miners, Appellant.

No. 16,592.

SYLLABUS BY THE COURT.

1. PUBLIC OFFICER—State Secretary of Mine Industries. The state secretary of mine industries, provided for in the act creating the state association of miners, is ex officio state mine inspector and a public officer.

2. MANDAMUS—Parties. The authority given to the presiding officers of five local miners' unions in that act to demand that the president of the state association of miners shall convene the delegates to such association by special call for the purpose of electing a successor to the state secretary of mining industries does not give to such presiding officers an interest in the subject sufficient to maintain an action in their own names to compel the issuance of such call by mandamus.

Appeal from Crawford district court; ARTHUR FULLER, judge. Opinion filed February 12, 1910. Reversed.

J. J. Campbell, and O. T. Boaz, for the appellant.

Jes F. Wolfe, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment allowing a peremptory mandamus requiring the appellant to issue a call to convene delegates to the state association of miners for the purpose of electing a

Titus v. Sherwood.

secretary of that association. The writ was allowed
upon motion and affidavit, as provided in sections 717
and 718 of the code of 1909. The defendant appeared
at the hearing of the motion and interposed various
objections and motions, which are again presented in
this court. One objection is that the plaintiffs had no
legal capacity to bring the action.

The office of state mine inspector was created by an
act passed in 183 (Gen. Stat. 1901, § 4132), to be
filled by executive appointment, with a salary to be
paid out of the state treasury. This act and other acts
afterward passed prescribed the duties of the officer,
which are numerous and important, designed to secure
safety for miners, protection of property and the de-
velopment and welfare of the mining industry. (Gen.
Stat. 1901, §§ 4136-4174.) All these are matters of
great public concern. By chapter 256 of the Laws of
1901 it is provided that delegates chosen by miners'
unions, organized as the act prescribes, constituting
the state association of miners, shall meet annually in
February and elect a "state secretary of mine indus-
tries," who shall be *ex officio* state mine inspector, and
"shall thereupon be vested with all the powers given
to, and charged with all the duties cast upon, the state
mine inspector by any law of this state." (Gen. Stat.
1901, § 4178.) The act further provides that the dele-
gates to the state association shall constitute an execu-
tive committee, and hold their offices until the next
annual meeting, and upon demand of the presiding offi-
cers of five unions at any time the president (who is
chosen at the annual meeting) shall immediately con-
vene these delegates by special call for the purpose of
electing a successor to the secretary; and the one so
elected may be removed in like manner. (Gen. Stat.
1901, § 4176.) Thus it appears that the state mine in-
spector, whose appointment at first was by the gover-
nor, is now chosen by the state association of miners,
and may be recalled by action of the same body.

The motion for the writ recited the due organization of five miners' unions, a demand by the presiding officers of such unions upon the defendant (the president of the association) to issue a call to convene the delegates to the state association to elect a successor to the secretary, as the act provides, and the refusal of the president to act. These five presiding officers, as plaintiffs, applied for and obtained the writ. Upon these facts the question is presented whether the plaintiffs have an interest in the subject sufficient to sustain the action in their own names. The general rules to be applied are:

"Mandamus will not lie at the instance of a private citizen to compel the performance of a purely public duty.

"Such a suit must be brought in the name of the state, and the county attorney and the attorney-general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties." (*Bobbett v. The State, ex rel. Dresher*, 10 Kan. 9, syllabus.)

Mr. Justice Brewer, in the opinion in the case cited, said: "When public rights are to be subserved, public officers must apply for the writ." (Page 16.) A private person will not be recognized in a court of justice as the guardian of purely public interests. (*Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173.) These principles have been adhered to during the judicial history of the state, and must govern this case.

The state secretary of mine industries is a public officer whose election and removal are of general public interest. The duties of this officer affect not only the mine workers and mine owners, but the people generally. "For none of us liveth to himself." Statutes for the protection of the lives, health and property of persons engaged in specially hazardous callings are constantly upheld (*Minneapolis Railway Co. v. Beckwith*, 129 U. S. 26; *In re Williams*, 79 Kan. 212), and

Titus v. Sherwood.

the officer charged by law with the oversight of such business and the enforcement of such laws is a public officer, however chosen.

It is argued that the act under consideration by its own terms gives the presidents of local unions the right to maintain this action, and that they are therefore "persons expressly authorized by statute" to sue, within the meaning of section 27 of the code. (Laws 1909, ch. 182, § 27.) Such authority is not given expressly or by implication even. It gives the right to demand that a call be made, but is silent as to any further authority. This right of demand, or request, is analogous to that given to twelve householders to petition for a road (Gen. Stat. 1901, § 6016), or that given to a specified number of voters or taxpayers to petition for the calling of an election to vote bonds for a local improvement, or to adopt the provisions of the herd laws, or of a high-school law. These and numerous other statutes merely prescribe the mode by which official action is invoked, but fall short of giving to the petitioners the right in their own names to compel such action.

The fact that the plaintiffs are miners gives them no greater personal interest than other miners have in the choice of this public officer. They can not maintain the suit in a representative capacity, for the unions which they represent are not given this power. They only make the demand. If, after such demand is made, the situation requires action in behalf of the public, the proper officer should be appealed to and an action brought in the name of the state.

Various other objections are made to the proceedings and several questions of practice are presented, but we find no error in the rulings thereon.

As the interest of the plaintiffs in the subject matter is not sufficient to maintain the action in their own names, the judgment is reversed.