No. 25,147.

THE STATE OF KANSAS, ex rel. PAYNE H. RATNER, County Attorney, Labette County, *Plaintiff,* v. J. A. JONES et al., as the Board of County Commissioners of Labette County, *Defendants.*

SYLLABUS BY THE COURT.

1. MANDAMUS—*Redistricting County into Commissioner Districts—Duty of County Commissioners.* Where a county has not been redistricted into commissioner districts for fourteen years, and where the population of one of the districts has increased so that it contains a majority of the entire population of the county, it is the duty of the county commissioners to redistrict the county so that the districts will be "as compact and equal in population as possible."

2. SAME—*County Attorney Authorized to Institute Proceedings in Name of the State.* Under the circumstances stated in paragraph 1, the county attorney is authorized to use the name of the state in legal proceedings in this court to enforce the performance of a public duty by the county commissioners of his county.

3. SAME—*County Commissioners Compelled to Perform Official Duties by Mandamus.* Where a duty rests upon a board of county commissioners

The State, *ex rel.*, v. Labette County.

that duty may be enforced by mandamus and may not be evaded on the ground that the commissioners have a discretion to act.

4. SAME. Where it clearly appears that the county commissioners refuse to perform an official duty, or so misconceive their official power or duty that the purpose of the law will be defeated, mandamus will lie to compel them to act.

Original proceedings in mandamus. Opinion filed November 10, 1923. Writ allowed.

*Payne H. Ratner,* county attorney, *C. J. Taylor* and *L. E. Goodrich,* both of Parsons, for the plaintiff.

*A. D. Neale,* of Chetopa, and *Elmer W. Columbia,* of Oswego, for the defendants.

The opinion of the court was delivered by

HOPKINS, J.: This is an original proceeding in mandamus brought by the county attorney of Labette county to compel the county commissioners of that county to redistrict the county into three commissioner districts.

Labette county has not been redistricted into commissioner districts since 1909. As at present constituted, district No. 1 includes eight townships, containing a number of towns, with a total population of 9,721. District No. 2 has seven townships, with a number of small towns, and a total population of 7,688. District No. 3 consists of Walton township and the city of Parsons, with a total population of 18,055. The population of the county is 35,404. To divide it into three districts equal in population would give to each district 11,821. The statute upon which the action is based reads:

"The board of county commissioners shall, on the day of the organization of the board or as soon thereafter as may be possible, meet and divide the county into three commissioner districts, as compact and equal in population as possible, and number them respectively 1, 2, and 3, and subject to alteration at least once every three years," etc. (Gen. Stat. 1915, § 2539.)

1. The defendants contend that the action is not prosecuted by the real party in interest; that, "some citizens of Parsons wish the county redistricted," that, "the interest of the state does not appear."

The question for consideration is whether or not a public duty rests upon the county commissioners to redistrict the county. It has been repeatedly held that mandamus will not lie at the instance of a private citizen to compel the performance of a purely public duty. Such suit must be brought in the name of the state. The county

attorney is authorized to use the name of the state in legal proceedings to enforce the performance of public duties. (*Bobbett v. The State, ex rel. Dresher,* 10 Kan. 9; *The State, ex rel., v. McLaughlin,* 15 Kan. 228, 233; *The State, ex rel., v. Faulkner,* 20 Kan. 541; *The State v. Lawrence,* 76 Kan. 940, 92 Pac. 1131; *The State, ex rel., v. Akers,* 92 Kan. 169, 172, 140 Pac. 637; *Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651; *Gormley v. School Board,* 110 Kan. 600, 204 Pac. 741; *Albach v. Fraternal Aid Union,* 100 Kan. 511, 164 Pac. 1065; *Titus v. Sherwood,* 81 Kan. 870, 106 Pac. 1070.)

In *Bobbett v. The State,* supra, it was said:

"So, where a public duty is neglected, the party wronged—the public—should be the complainant, and her officers should conduct the suit. The great business of the public is carried on by agents—officers whom the people select; and if the public suffers wrong, it is the duty of those agents to see that such wrong is righted. The county attorney and attorney general are the officers specially charged with the duty of representing the public in all litigation." (p. 15.)

It is not necessary for the state to show any specific injury in order to enforce an official duty. It has an interest in seeing that public duties are not disregarded by public officers. (*The State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217, and cases cited.)

2. It is insisted by the defendants that the county attorney has no authority to prosecute this proceeding in the name of the state in this court. With this contention we cannot agree. It is the duty of the county attorney to prosecute or defend all suits in which the state or his county is a party in interest. (Gen. Stat. 1915, § 2620.)

It was held in *Martin, Governor, v. The State, ex rel.,* 39 Kan. 576, 18 Pac. 472, that a county attorney of one county cannot institute an action in the nature of a public prosecution in the name of the state in another county than his own without the consent and against the objection of the attorney-general. That was a case where the county attorney of Stevens county sought to prosecute an action as county attorney on relation of the state against John A. Martin, as governor, in Shawnee county. The principles there enunciated are not applicable here. The county attorney of Labette county, who is the state's attorney for his county, is here prosecuting, in a court of state-wide jurisdiction, an action against the county commissioners of his own county. The acquiescence of the attorney-general is not necessary. The attorney-general could not

stay the prosecution unless by special order from the governor. The same contention was raised by the defendant in the case of *The State v. Lawrence*, supra, and there decided adversely to the contention of the defendants.

3. It is next insisted by the defendants that the petition and writ fail to state facts sufficient to constitute a cause of action, in that, they do not allege fraud and collusion on the part of the defendants, and whether or not there be a redistricting of the county lies in the discretion of the board of county commissioners. The population of district 2 is 4,133 less than one-third of the total population of the county, while the population of district 3 is 6,134 in excess of one-third of the population of the county, making a total difference between districts 2 and 3 of 10,367. District 1 has a population of 2,100 less than one-third the population of the county, the difference between districts 1 and 3 being 8,334. Are not these facts sufficient to require action by the board to meet the requirements of the statute? Have not the defendants failed to perform a public duty in their refusal to redistrict the county in order that the districts may be "as compact and equal in population as possible"? The board of county commissioners is the general business agent of the county, and is necessarily vested with a large measure of discretion in promoting the public good. The determination of various questions coming before it involves the exercise of judgment and discretion. While courts are reluctant to interfere with the judgment and discretion of an officer, if exercised in good faith, they will not refuse to act where it is apparent that the officer has failed, neglected or refused to perform a public duty. No valid reason is assigned why the defendants cannot redistrict Labette county and make the respective districts fairly compact and equal in population. It is a definite duty enjoined upon them by the law.

In *Hayes v. Rogers*, 24 Kan. 143, it was said:

"Full power of rearranging the county into commissioner districts is given, with the limitations that they shall be compact districts, and as equal in population as possible. In the very nature of things, the changes of population in some of our new and growing counties would require very radical changes of territory in order to make the districts equal in population . . . The alterations can be made as often as the commissioners see fit. The statute evidently contemplates one every three years." (p. 145.)

In *The State, ex rel., v. Osage County*, 112 Kan. 256, 259, 210 Pac. 619, it was said:

"The statutes of most, if not all, the states contain similar provisions by which the legislatures have vested in boards of county commissioners or similar bodies the duty and power to create new districts out of old, as judicial districts, and districts embracing parts of a county. These statutes usually contain similar provisions, to the effect that the districts created shall be comprised of adjacent territory, as nearly compact as possible, and with a population as nearly equal as possible."

No reason is apparent why the city of Parsons may not be divided, placing a portion, if necessary, in each of the three districts. In the Osage county case, *supra*, it was also said:

"We think the word 'compact' as used in the statute means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest. Besides, we can conceive of no reason why a city may not be divided so that part of it lies in one commissioner district and part in another. In fact, that condition obtains in many of the counties where there are large cities. The city of Kansas City, Kansas, lies in three different commissioner districts. The boundary lines of the district in every case follow the boundary lines of the city wards so as not to interfere with the voting precincts." (p. 260.)

Courts should interpose by mandamus, in the case of officers vested with discretionary power, only where it clearly appears that they refuse to perform official duty, or so misconceive official power or duty that the purpose of the law will be defeated. (*Mauldin v. Matthews*, 81 S. C. 414, 128 Am. St. Rep. 919.)

It is plain that the commissioners of Labette county have misconceived their official power or duty. The discrepancy in the ratio of population in the commissioner districts is so great as to leave no question but that the purpose of the law will be defeated unless the county is redistricted.

The duty which the state seeks to have performed by this proceeding is one specifically enjoined by the statute. The proper means by which defendants may be compelled to perform it is by writ of mandamus.

The writ is allowed.