No. 36,183

The State of Kansas, ex rel. A. B. Mitchell, Attorney General, etc., *Appellee*, v. The Board of County Commissioners of the County of Reno, Stanley Hill, Chairman, Dan Forker and C. O. Hitchcock, as Members, etc., *Appellants*.

(148 P. 2d 1012)

Opinion filed May 18, 1944.

*Frank S. Hodge*, of Hutchinson, argued the cause, and *Roy C. Davis, Warren A. White, Wm. H. Vernon* and *E. A. White*, all of Hutchinson, were on the briefs for the appellants.

*Max Wyman*, special assistant attorney general, argued the cause, and *A. B. Mitchell*, attorney general, and *C. H. Hobart*, assistant attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was a proceeding in mandamus originally filed in the district court. From a judgment for plaintiff certain defendants appeal.

The motion for the writ, after setting forth the status of the parties, alleged that the board of county commissioners of Reno county, in purported accordance with G. S. 1935, 19-204, after its organization and on March 5, 1943, by resolution duly adopted, divided the county into three commissioner districts, each composed of certain territory, the first containing a population of 31,727, the second a population of 9,624 and the third a population of 12,997, and that the population of the county was 54,348; that it was the duty of the defendant board, under the above-mentioned statute, to redistrict Reno county and divide it into three commissioner districts as compact and equal as possible so that each district would have a population of approximately 18,116 persons, all as shown by

the official census in the office of the county clerk of the county; that the defendant board had misconceived its official power or duty under the section of the statute and the purpose thereof would be defeated unless the county be redistricted; that the defendant board had failed, neglected and refused to comply with the statute; that plaintiff had no plain and adequate remedy and was entitled to a writ of mandamus directed to the defendant board, commanding it and the individual members thereof to redistrict the county into three commissioner districts as compact and equal in population as possible, and it asked for judgment accordingly.

An alternative writ was issued, and the board and Hill, its chairman, and Forker, a member, filed an answer containing a denial of all matters alleged in the motion not admitted by the answer. These admissions included composition of the board and the passage of the resolution on March 5, 1943. It was denied the board failed, neglected or refused to comply with the law or that it misconceived its official power, and it was alleged its action was bona fide and done after mature deliberation and consideration "and in accordance with said statute to the best judgment and discretion of said board, all as is more particularly set forth hereinafter." Summarized, the remainder of the answer alleged that this is a representative government and the board conceived it its duty to construe the law and divide the county into districts in accordance with the will of the majority of the people of the county to achieve the best county government; that such government deals at least two-thirds with the county outside the city of Hutchinson and does not affect the city in an appreciable degree; that economic lines should also be considered; that geographical representation as well as numerical representation has always been considered, and that all such matters must be considered in determining whether the districts are as compact and equal in population as possible, and all of said matters were considered; that the situation in Reno county was different from that found in an ordinary county in that after a political upheaval in 1922 the county was redistricted on substantially the same division lines as at present constituted; that said division was largely on economic lines, with one-third of the assessed valuation in each district, and that said division continued with popular approval up to and including the organization of the defendant board on January 11, 1943; that on that date the board was organized and continued the matter of redistricting to March 5,

1943, to ascertain whether the people of the county desired a change; that inquiry was made and that no sentiment for a change being evident the board took action on March 5, 1943; that on that date the first district had a population of 27,777 and an assessed value of less than $28,000,000; that the second district had a population of 10,105 and an assessed valuation of $30,502,312; and the third district had a population of 12,715 and a valuation of $29,941,556. (It may here be noted the first district included most of the city of Hutchinson, the second a small part of the city and three-fifths of the county area, and the third the remaining two-fifths of the county area); that said districts constituted a well-balanced division "taking into consideration area, population and assessed valuation, also the fact that rural areas mainly are affected by the county government and that the city of Hutchinson is largely a self-contained unit." It was also alleged that due to war conditions the population was changing, and that in the board's judgment and discretion it would be unfair and unwise to force a new division of the county, with large numbers of the population away and unable to express their views upon the matter; that on March 5, 1943, upon the motion to divide the county into commissioner districts, members Hill and Forker voted in favor of the resolution and defendant Hitchcock cast no vote; and that since no demand for change had been presented to the board by any number of citizens, and that to the best knowledge and belief of the board, and after diligent inquiry, the names of no more than ten men had been ascertained who were in favor of change in the districting, "that it would be unwise and unfair to change the present districts until after the war and then only after public opinion has been thoroughly sampled." The board prayed the writ be denied.

The defendant Hitchcock filed an answer that he was always in favor of a redistricting, and he joined in the prayer of plaintiff's motion.

After the above pleadings had been filed, a stipulation was filed showing the population of the districts and the percentages of population for the years 1939 to 1943, inclusive. The population and percentages shown are as follows:

| Dis-trict | 1939 | | 1940 | | 1941 | | 1942 | | 1943 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Pop. | % | Pop. | % | Pop. | % | Pop. | % | Pop. | % |
| 1 | 30316 | 55 | 29599 | 55 | 28982 | 54 | 27777 | 55 | 31727 | 58 |
| 2 | 10902 | 20 | 10698 | 20 | 10634 | 20 | 10105 | 20 | 9624 | 18 |
| 3 | 13987 | 25 | 13835 | 25 | 13688 | 26 | 12715 | 25 | 12998 | 24 |

Thereafter the plaintiff filed its motion asking for judgment on the pleadings and on the stipulation, and for the issuance of a peremptory writ of mandamus. Upon consideration thereof, the trial court allowed the motion and issued the peremptory writ, directing the defendant board within thirty days "to redistrict the county into three commissioner districts as compact and equal in population as possible" and make report of its action to the court, which reserved jurisdiction to see that its judgment was properly carried out. After waiting almost fifty-seven days, the defendants, the board of county commissioners and Hill and Forker, appealed to this court.

In this court it is contended first that the trial court was without authority to issue a peremptory writ upon a motion for judgment. The gist of appellant's argument is that the only pleadings in proceedings in mandamus are the motion for the writ and the answer (G. S. 1935, 60-1709). That section further provides, however, that after issues joined, further proceedings may be had in the same manner as in a civil action. The preceding section (G. S. 1935, 60-1708) provides that if an answer be made, the same shall not conclude the plaintiff, who may avail himself of any valid objections to its sufficiency. We think the motion for judgment properly raised the question whether the allegations of the answer, taken as true. stated a defense, and that it was proper for the trial court to rule on the motion.

Appellants next direct our attention to certain of our decisions wherein it has been held that mandamus is a discretionary writ (State v. Cloud County Comm'rs, 148 Kan. 626, 84 P. 2d 405), and that the plaintiff must show a clear legal right to have the thing done which is asked for and a clear legal duty of the party sought to be coerced to do the thing he is called upon to do (Burke v. State Board of Canvassers, 152 Kan. 826, 107 P. 2d 773), and contends, in effect, that the board of county commissioners have a discretion to exercise which ought not be controlled in the absence of fraud, bad faith or gross impropriety.

For our purposes. the controlling statute, G. S. 1935, 19-204, reads as follows:

"The board of county commissioners shall, on the day of the organization of the board or as soon thereafter as may be possible, meet and divide the county into three commissioner districts, as compact and equal in population as possible, and number them respectively 1, 2, and 3, and subject to alteration at least once every three years . . ."

Appellants direct our attention to decisions from other states having statutes similar to ours, but we think the issue is determined by our own decisions, and shall not review the decisions of other states.

In *State, ex rel., v. Osage County,* 112 Kan. 256, 210 Pac. 619, a redistricting order was attacked on the ground the districts were not as nearly compact and equal in population as possible. The districts created contained substantially equal population, but it was contended they were not compact, and that the lines of the districts were arbitrary. In the course of the opinion it was stated the board had a large measure of discretion, and for plaintiff to recover he must sustain the burden of showing an abuse of that discretion. It was held that not every departure from equality and number of inhabitants in a district ought to be subject to review by the courts, but that there must be a grave, palpable and unreasonable deviation from the standard fixed by the statute, and sufficient to convince a fair man that a wholly unnecessary inequality had been intentionally provided, and it was further held that there was no reason why a city may not be divided so that one part might be in one district, and another part in another district. Under the showing made in that case, a writ of mandamus to compel a redistricting was denied.

In *State, ex rel., v. Labette County,* 114 Kan. 726, 220 Pac. 275 the plaintiff sought to compel a redistricting. The holding of this court sufficiently shows the facts. It was held:

"Where a county has not been redistricted into commissioner districts for fourteen years, and where the population of one of the districts has increased so that it contains a majority of the entire population of the county, it is the duty of the county commissioners to redistrict the county so that the districts will be 'as compact and equal in population as possible.'

"Under the circumstances stated in paragraph 1, the county attorney is authorized to use the name of the state in legal proceedings in this court to enforce the performance of a public duty by the county commissioners of his county.

"Where a duty rests upon a board of county commissioners that duty may be enforced by mandamus and may not be evaded on the ground that the commissioners have a discretion to act." (Syl. ¶¶ 1, 2, 3.)

In *State, ex rel., v. Montgomery County Comm'rs,* 125 Kan. 379, 264 Pac. 84, it appeared that according to the census of 1927 the county had a population of 57,438 and was divided into three commissioner districts of unequal population. One commissioner sought

a redistricting and on July 5, 1927, the other two made an order fixing districts of population of 9,487, 19,118 and 28,825. Proceedings for a writ of mandamus were instituted in this court to compel a redistricting. The defendants contended the population figures were inaccurate. In disposing of the cause this court held:

"In an action to compel a board of county commissioners to redistrict the county into three commissioner districts, as compact and equal in population as possible, it is held that under the governing facts in the record there is palpable disparity of population in the existing districts, and that under the requirements of the statute the county should be redistricted.

"So far as population is concerned such redistricting should be done on the basis of the last official census of the county, notwithstanding the claim of the commissioners that there are errors in that census.

"The fact that an apportionment of a county on the basis of population may not be practical without placing parts of a city in more than one district, will not prevent such a division if the boundary lines of the districts do not divide city wards nor interfere with voting precincts." (Syl. ¶¶ 1, 2, 3.)

The writ prayed for was allowed.

It will be noted that the statute fixes as a standard only that the districts shall be "as compact and equal in population as possible." Under that standard, and the interpretation placed upon it in the foregoing decisions, we examine the answer of the appellants. Although not in the order alleged in the answer, it appears there has been no substantial change in the commissioner districts of Reno county since 1922 and that since at least 1939 one district has had within its limits more than one-half of the population of the county; that the board has conceived it to be its duty to construe the law and divide the county into districts in accordance with the will of the majority of the people of the county; that economic lines and geographical as well as numerical representation have been considered; that the situation in Reno county is different from an ordinary county; that as now constituted the districts have substantially equal assessed property valuation; that taking into consideration area, population, assessed value and the fact that rural areas mainly are affected by county government and the city of Hutchinson is not, the districts are a well-balanced division. It is further stated there has been no demand by any considerable number of citizens for any change.

It is clear from the answer that the board of county commissioners has an erroneous view of the requirements of the statute and its duties under it, and that it has subordinated the statutory require-

ment that the districts be "as compact and equal in population as possible" to economic considerations, assessed valuation, a conception of what the majority of people favored, the claimed fact Reno county was different from other counties, and that the city of Hutchinson was not so much affected by the county government as the rural areas of the county. If the board of county commissioners may take into consideration all such matters, another county may use the same considerations, as well as others of its choosing, and thus each board will be at liberty to expand the statutory requirements and justify its act by the simple statement that what it did was done in good faith and in the exercise of discretion. We think that may not be done. The board must follow the standard fixed by the statute, and its exercise of discretion and good faith must be limited to that standard and not to some other which the legislature has not fixed.

We have not overlooked appellants' contentions the district must be "compact." That is one requirement of the statute, but it needs no discussion here for there is no claim the districts as now existing are not "compact."

We note also appellants' question as to what population figures are to be used if a redistricting is made. The last official census is for 1943 and should be used. See *State, ex rel., v. Montgomery County Comm'rs,* supra, syl. ¶ 2.

In view of the position taken by the defendant Hitchcock, no costs should be assessed against him.

The judgment of the trial court is affirmed and it is ordered that the mandate of this court evidencing such affirmance be sent to the trial court forthwith.