No. 46,027

J. G. ANDREWS, CHARLES T. DUMENIL, PAUL H. FOX, FREDRICK F. JACOBS, ROBERT M. JAY, NOBLE L. LINCH, WARREN L. STOUT, HARRY N. WINTON, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY, NOBLE C. BRADBURY, chairman, LENNIE M. ATKINS and AARON B. JOHNSON as members, *Appellees*.

(485 P. 2d 1260)

Opinion filed June 12, 1971.

*George E. Sybrant*, of Arkansas City, argued the cause and was on the brief for the appellants.

*Thomas D. Herlocker*, County Counselor, argued the cause, and *Richard Camp*, County Attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is an action originally brought in the district court by residents and taxpayers of Cowley county to require a rearrangement of the three county commissioner districts in that county under the authority of K. S. A. 19-204.

In pertinent part the statute provides:

"The board of county commissioners shall, on the day of the organization of the board or as soon thereafter as may be possible, meet and divide the county into three commissioner districts, *as compact and equal in population as possible,* and number them respectively 1, 2, and 3, and subject to alteration at least once every three years, but if they fail to make such division before the election of the county officers, such failure shall in no case prevent the election of the commissioners: . . ." (Emphasis added.)

The action was filed in June, 1969. The last major rearrangement of the three commissioner districts was accomplished in January, 1964. However, some slight changes to equalize population were made in April, 1968. After a hearing the district court found the three districts were not in substantial compliance with the dictates of K. S. A. 19-204, and ordered a redistricting of the three commissioner districts. The court continued to retain jurisdiction of the controversy. Thereafter the county commissioners rearranged the districts by a resolution filed in August, 1969. The plan was then submitted to the court and the rearrangement of August, 1969, was approved. Additional objections had been filed against the plan by the plaintiffs and these were considered by the court. The present appeal is from the order of the district court approving the plan of August, 1969.

Although the appellants list eleven separate points on appeal, neither their brief nor their arguments are directed to these points. Therefore all points not discussed in this opinion are considered to have been abandoned.

The general thrust of appellants' claims on appeal lie in three general directions. First, the statutory requirements as to compactness and equality of population have not been met; second, the commissioner districts were gerrymandered to prevent the citizens of Arkansas City from electing more than one county commissioner; and third, the district court failed to state the facts and legal principles upon which its decision is based.

Before discussing these three points some general background information on Cowley County is necessary. According to a map and other information gleaned from the record, Cowley County covers an area 33 miles north and south and 35 miles east and west. This is an area of approximately 1155 square miles. It has a population of 35,439. There are two fairly large cities located within the county. Arkansas City, with a population of 14,061, is located in the southwest corner of Cowley County, five miles from the west boundary and three miles from the south boundary. Winfield, the other city, is the county seat, and it has a population of 10,494. It is located about eight miles from the west boundary of the county and midway between the north and south boundaries. Outside of these two cities there is a total of 10,884 people living in twenty-five rural townships which include several small cities or towns. A recitation of the foregoing facts alone indicates some of the difficulties encountered in arranging Cowley County into three districts as compact and equal in population as possible. One-third of the total county population is 11,813. This ideal population for a commissioner district is somewhat less than the population of Arkansas City (14,061), only slightly more than the population of Winfield (10,494) and slightly more than the total population in all remaining rural areas (10,884).

In the rearrangement of commissioner districts one other primary factor must be kept in mind in addition to compactness and equality of population. In dividing a county into three commissioner districts the boundaries of the districts must follow the boundaries of voting precincts. The people in one voting precinct cannot be divided or placed in two or more commissioner districts. This prohibition stems from the ballot and voting procedures of this state. This factor was recognized in *State, ex rel., v. Osage County*, 112 Kan. 256, 210 Pac. 619, where the court said:

"No reason appears why a city may not be divided so that one part lies in one district and another part in another district so long as the boundary lines of the district follow the boundaries of the city wards and do not interfere with voting precincts." (Syl. ¶ 5. See, also, *State, ex rel., v. Montgomery County Comm'rs*, 125 Kan. 379, Syl. ¶ 3, 264 Pac. 84.)

Now let us consider the arrangement of the three commissioner districts as finally approved by the district court in its order filed in November, 1969.

District # 1 includes 7,157 people from Winfield plus 4,369 people from eleven rural townships. The rural townships generally lie

in a northeasterly direction from Winfield and extend to the east and north boundaries of the county. The district has a total population of 11,526 people. This is 287 persons less than the goal of an ideal district which would contain exactly one-third of the total county population.

District # 2 includes 9,984 people from Arkansas City plus 2,126 people from six rural townships. The rural townships lie east and west along the entire south boundary of the county. The district has a total population of 12,110 people. This is 297 persons more than the goal of an ideal district.

District # 3 includes 3,337 people from Winfield, 4,077 people from Arkansas City and 4,389 people from ten rural townships. These rural townships lie in an el shape along the west and north boundaries of the county. The district has a total population of 11,803 people. This is only 10 persons less than the goal of an ideal district.

The population disparities among these districts of — 10, — 287 and + 297 are well within the acceptable tolerances dictated by K. S. A. 19-204 and as interpreted by both federal and state case law. Such a division results in three districts in Cowley County as equal in population as possible when other necessary factors such as voting precinct boundaries, natural barriers, topography, transportation and compactness are considered. (See *State, ex rel., v. Osage County*, supra.)

Appellants have devoted much of their brief to federal apportionment cases such as *Baker v. Carr*, 369 U. S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691; *Gray v. Sanders*, 372 U. S. 368, 9 L. Ed. 2d 821, 83 S. Ct. 801; *Wesberry v. Sanders*, 376 U. S. 1, 11 L. Ed. 2d 481, 84 S. Ct. 526; *Reynolds v. Sims*, 377 U. S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, and *Avery v. Midland County*, 390 U. S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114.

In addition to those cases we might add *Long v. Avery*, 251 F. Supp. 541 (1966) and *Simone v. MacPhail*, 291 F. Supp. 697 (1968) where the federal court under the equal protection clause of the 14th Amendment to the United States has been called upon to examine the apportionment of Kansas senatorial districts and of the county commissioner districts in Crawford County, Kansas.

It would add little to this opinion to review the federal cases for what has been declared by the federal courts in this area was recognized long ago in K. S. A. 19-204. The Kansas courts when

called upon have enforced the requirement of the statute, that each county be rearranged into three commissioner districts "as compact and equal in population as possible." Each county is subject to rearrangement at least once every three years as stated in the statute. A few of the cases which have reached this court in the past are *State, ex rel., v. Osage County,* supra; *State, ex rel., v. Labette County,* 114 Kan. 726, 220 Pac. 275; *State, ex rel., v. Montgomery County Comm'rs,* supra, and *State, ex rel., v. Reno County Comm'rs* 158 Kan. 573, 148 P. 2d 1012.

Appellants complain of the rearrangements approved by the district court because of lack of compactness. This requirement was examined in *State ex rel., v. Osage County,* supra, where it was said:

"The word 'compact' has various shades of meaning when used in this connection, and permits the consideration in good faith of existing lines, topography, means of transportation and other factors. It means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest." (Syl. ¶ 4.)

The complaint arises because of three small border areas in West Creswell precinct which lie between the boundary of Bolton Township and the city boundaries of Arkansas City. Arkansas City lies within Creswell Township. Bolton Township to the south and Creswell Township to the north have long been divided by a natural boundary formed by the Arkansas River. Arkansas City, lying in Creswell Township, has grown south in an irregular pattern and its boundary now coincides with that of Creswell Township in three separate segments along the river. However, there are three small areas of West Creswell precinct along the river boundary which have not been taken into the city. These three small areas plus the larger area of West Creswell precinct which surrounds the city on the west, north and east, make up one voting precinct, and this entire precinct was included in commissioner district # 3.

The precincts and wards in Arkansas City which border the river and lie adjacent to Bolton Township on the south were included along with Bolton Township in commissioner district # 2, which district runs along the south boundary of the entire county.

Therefore, we are confronted with not only the requirement of compactness but also the requirement that the integrity of the boundaries of voting precincts be maintained. The present plan preserves the integrity of the boundaries of West Creswell precinct,

all of which was placed in district #3. The integrity of the boundaries of voting precincts and wards of Arkansas City was also preserved.

The three small non-contiguous areas are a natural result of preserving the integrity of the boundaries of these voting precincts. Our statute relating to the rearrangement of commissioner districts contains no specific requirement as to contiguity.

The only arrangement of commissioner districts which would make these areas contiguous would be to include all of West Creswell precinct with all of Arkansas City to make one commissioner district. This would be unacceptable from a population standpoint for it would create a district with 14,853 people, 3,041 people in excess of the ideal goal of 11,813. In addition, it would result in said district being totally surrounded by the other districts. As expressed by the district judge in his original decision requiring a redistricting, the other districts would then encompass this district "as a persimmon surrounds its seeds." Such an arrangement of districts did not appear satisfactory to the trial judge when he ordered redistricting. It does not appear satisfactory to us when we consider one of the purposes of the county commissioner districts in Kansas, that of overseeing a county highway program.

Because of what has been said we believe commissioner district #3 is as compact as possible, in that it has a close union of the parts, lies in narrow compass and is the nearest practical approximation to compactness as is possible when the integrity of voting precincts is preserved. (See definition of compactness, 8 Words and Phrases, [perm. ed.] p. 250.)

We have carefully studied the three commissioner districts as rearranged and approved. We hold they are as compact as possible under the circumstances, and are arranged in compliance with the dictates of the statute and the case law.

The second complaint of the appellant is that the boundaries of the three districts were gerrymandered to prevent the citizens of Arkansas City from electing more than one county commissioner.

This complaint is not made on the basis of evidence, other than the results achieved by the commissioners in their final plan. The trial court found the members of the board of county commissioners conscientiously attempted to comply with the law and the order of the court. There is no evidence in the record to the contrary. It would be difficult, solely on the basis of the results achieved here, to ascribe improper motives to the commissioners.

The arrangement of districts placed the city of Winfield in a position of influence in district #1 by including 7,157 people from Winfield in the district along with 4,369 from the outlying rural areas.

The arrangement placed the city of Arkansas City in a position of influence in district #2 by including 9,984 people from Arkansas City in the district along with 2,126 from the outlying rural areas. Other things being equal the people in these two population centers would each be able to influence any district election to obtain one commissioner in the county favorable to their interests.

The third commissioner district contained 3,337 people from Winfield, 4,077 people from Arkansas City and 4,389 people from the outlying rural areas. Under this arrangement neither city appears to have any undue advantage in electing the third commissioner, for the balance of power would lie with the outlying rural areas.

We point these matters out merely to examine the charges of gerrymandering. We do not wish to be understood as saying that such a fine line of balance is necessary. In *State, ex rel., v. Osage County,* supra, and in *State, ex rel., v. Reno County Comm'rs,* supra, it was held that cities may be divided so that one part lies in one commissioner district and another part lies in another district. The discretion in making the division under the statute is lodged in the board of county commissioners. In the absence of evidence of improper motives on their part a plan which meets the statutory requirements of compactness and equality of population without violating the integrity of voting precincts should be approved, for no abuse of discretion on the part of the board can be presumed. Abuse of discretion must always be clearly established by those attacking the results of discretionary action of a governing body in order to establish the unreasonableness of the action. (*Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Creten v. Board of County Commissioners,* 204 Kan. 782, 466 P. 2d 263.)

In view of our previous conclusions as to the compactness and equality of population in these districts, we find the claim of gerrymandering to be without substantial merit.

The final complaint on appeal is directed toward a claim of insufficiency of the trial court's findings of fact and conclusions of law. The complaint is not specific. No claim is made that any controlling finding or conclusion was omitted by the trial court.

The original findings and conclusions of the court appear in its memorandum opinion and in the journal entry which followed on April 2, 1969. It would serve no useful purpose to iterate those findings. They are set forth at length in eleven pages of the record. In line with these findings the board was directed to and did redistrict the commissioner districts.

The final conclusions of the court in approving the rearrangement of those districts are as follows:

"1) That the Board of County Commissioners have conscientiously attempted to comply with the law and with the order of this court previously made and entered by memorandum opinion on January 29, 1969, and by Journal Entry on the 2nd day of April, 1969;

"2) That the plan submitted by the said Board of County Commissioners meets all statutory and constitutional requirements for redistricting;

"3) That some irregularity must necessarily exist in the shaping of the districts, resulting from following natural boundary lines in preserving the integrity of political subdivisions.

"4) That the districts meet the statutory requirements for compactness and that any deviation of numerical equality of population is within acceptable limits considering the circumstances of this particular case.

"5) That the plan herein approved contained pockets formed between Arkansas City and the Arkansas and Walnut Rivers and normally such pockets are to be avoided; but in this particular instance, there is no practical solution for avoidance thereof, and that no disadvantage would occur, per se, to the voters living within the pocketed areas; or if any disadvantage does exist, it would be the same in whatever district they were placed."

The requirement of findings under K. S. A. 60-252 (a) is that the court state the controlling facts. The controlling facts were fully set forth in the memorandum opinion which incorporated into the findings all facts disclosed by the various exhibits and maps of the area, together with the stipulations of facts by the parties. By reference to the exhibits and stipulations the court set forth the controlling facts. The findings and the conclusions quoted therein were sufficient to resolve the issues before the district court.

The findings required by K. S. A. 60-252 (a) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. These requirements are apparent in the statute itself.

The purpose of the requirements in the statute is similar to the purpose for findings by administrative agencies. See *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 433

P. 2d 572; and *Central Kansas Power Co. v. State Corporation Commission*, 206 Kan. 670, 482 P. 2d 1.

The findings of the district court and its reasons for the decision are adequately set forth in the memorandum decision and in the final journal entry of judgment.

The judgment is affirmed.