COLIN KEATING *et al.* v. L. L. MARBLE *et al.*

1. NEW COUNTIES, *Organization of; Appointment of Officers.* Under chapter 24, Comp. Laws of 1885, p. 256, relating to the organization of new counties, and the amendments thereto, after the county officers appointed by the governor qualify and enter upon the discharge of their duties, an unorganized county becomes duly organized.

2. ———— *Division into Commissioner Districts; Election by Districts.* The temporary or special county commissioners appointed by the governor have power to divide the county into commissioner districts; and the commissioners elected to succeed the special or temporary county commissioners, after such division, are to be elected by the districts, and not by the votes of the entire county.

*Error from Ford District Court.*

GRAY county, in this state, was organized by the governor in July, 1887, by the appointment of three citizens to act as commissioners, and one to act as county clerk, and one to act as sheriff. These parties qualified, and entered upon the discharge of the duties of their respective offices. The commissioners, in August, 1887, divided Gray county into townships, and also into commissioner districts numbered one, two, and three. At the general election held on November 8, 1887, there were in Gray county two tickets in the field: the candidates upon one ticket being for Cimarron for county seat, and

the candidates upon the other ticket being for Ingalls. Upon each of these tickets persons were named as candidates for commissioners in the first, second, and third districts. All of the tickets used by each party contained the names and designated the districts of all three of its candidates for commissioners. At the election, the vote cast for county commissioners in the districts was as follows:

| DISTRICTS. | CANDIDATES. | ELECTION PRECINCTS. | | | | | |
|---|---|---|---|---|---|---|---|
| | | *Foote* | *Ingalls* | *Hess* | *Montezuma* | *Logan* | *Cimarron* |
| Comm'r, First district..... | L. L. Marble ...... | 32 | 119 | 153 | 213 | 65 | 35 |
| | Colin Keating.... | 83 | 2 | 58 | 9 | 26 | 232 |
| Comm'r, Second district.. | D. Francisco ...... | 51 | 121 | 134 | 213 | 85 | 39 |
| | J. Q. Shoup.......... | 58 | .......... | 57 | 9 | 5 | 312 |
| Comm'r, Third district ... | W. W. Smith ...... | 100 | 121 | 212 | 222 | 90 | 266 |

After the election the vote was canvassed by districts so far as the question who were elected to the office of commissioner was concerned. Under the canvass, Colin Keating and J. Q. Shoup were declared to be elected, these persons having received a majority of all the votes cast in the districts, from which each was a candidate respectively. Taking the vote of the county as it was cast at large, L. L. Marble and D. Francisco received a majority. After the canvass of the votes and declaration of the result, Keating and Shoup qualified as county commissioners, and entered upon the discharge of the duties of their offices. Thereupon, L. L. Marble and D. Francisco instituted a contest before the contest-election court. By agreement of the parties, the cases were consolidated, and an agreed statement of facts was filed with the contest court. Among other matters agreed to were the following:

"That the only questions to be determined in this case are as follows, to wit: Ought all the votes cast for the contestors and contestees in each precinct in said county at the general election held therein on November 8, 1887, as above set forth as having been canvassed by the board of commissioners on the 15th day of November, 1887, to be now counted by the

court of contest for the purpose of determining who were legally elected for commissioners of said county as between the contestors and contestees, or should the board of canvassers have canvassed the votes in the manner in which they did canvass the same, and have rejected the votes they did reject as hereinabove stated and set forth, for the purpose of determining who were elected to the office of county commissioner? It being further agreed that if the board of canvassers should have canvassed all the votes cast for the contestors and contestees in each precinct in the county herein as cast at said election as above set forth, or if the contest court should now in law count the same for the purpose of determining this question, then and in such case the contestors were duly elected at said general election to the office of county commissioner, and should have judgment in their favor severally, as follows, to wit: L. L. Marble should have judgment against Colin Keating, and D. Francisco should have judgment against J. Q. Shoup. And if the board of canvassers should have canvassed the votes in the manner in which they did canvass the same, and have rejected the votes they did reject as hereinabove stated, then, in such case, the contestees were duly elected at said general election to the office of county commissioner, and should have judgment in their favor severally as follows, to wit: Colin Keating should have judgment against L. L. Marble, and J. Q. Shoup should have judgment against D. Francisco."

The contest court decided in favor of L. L. Marble and D. Francisco, upon the ground that the entire vote cast in the county at the election should be counted for them for the office of commissioner. The judgment of the contest court was taken by proceedings in error to the district court, and there affirmed on January 25, 1888. *Keating* and *Shoup* excepted, and bring the case here.

*Johnson, Martin & Keeler*, for plaintiffs in error.

*J. T. Whitelaw, G. W. Dunn,* and *C. N. Sterry,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question involved in this case is whether Colin Keating and J. Q. Shoup, or L. L. Marble and D. Francisco, were elected county commissioners at the

general election held on November 8, 1887, in Gray county. Keating and Shoup received a majority of all the votes cast in the districts from which each was a candidate. L. L. Marble and D. Francisco received a majority of all the votes cast in the county, but not a majority in the districts from which each was a candidate. The commissioners appointed by the governor at the organization of Gray county divided the county into commissioner districts, numbered one, two, and three, before the election. The question is, whether the commissioners appointed by the governor had the power to divide the county into commissioner districts. On the part of Keating and Shoup, it is contended that they had the power. On the part of Marble and Francisco, it is claimed that such commissioners are limited in their rights and powers to the precise duties enumerated by the statute under which they are appointed, and that they have no power to perform any other duties. The question is one of statutory construction. Section 1, chapter 128, Laws of 1887, reads:

"The governor shall appoint three persons, citizens of said unorganized county, to act as commissioners, and one to act as county clerk, to whom he shall cause to be delivered the duplicate returns aforesaid, one to act as sheriff, and, when the election precincts shall have been established, at least one justice of the peace in each election precinct, and shall designate and declare the place chosen by the greatest number of legal voters, to be the temporary county seat; and from and after the qualification of the county officers appointed under this act, the said county shall be deemed to be duly organized."

Section 2 of chapter 24, Comp. Laws of 1885, page 257, is—

"That said commissioners and such clerk, before entering upon the discharge of their respective duties, shall take and subscribe an oath, faithfully, promptly and impartially to perform them as herein required; and such oath shall be filed with and kept in the office of the county clerk."

Section 3 of chapter 128, is—

"That said commissioners, or a majority of them, shall proceed without delay to divide said county into suitable and convenient townships. Each township shall constitute an

election precinct, and such commissioners shall recommend to the governor two persons in each township to be appointed justices of the peace as provided by law."

Section 5 of chapter 128 provides that the commissioners shall cause polling-lists of the legal voters to be made and furnished to the judges of election, and that they shall give thirty days' notice of the date designated for holding the first election.

Section 4 of chapter 24, Comp. Laws of 1885, page 257, is—

"The special commissioners appointed for the county shall constitute the board of canvassers for such election, and in the discharge of their duties as such, shall be governed by the law in force at that time."

Section 9 of chapter 24, Comp. Laws of 1885, page 258, is—

"It shall be the duty of the county commissioners to make out and cause to be entered upon the records of the county an accurate description of the townships into which the county shall have been divided; and it shall be the duty of the county clerk to make out and transmit to the secretary of state a map of the county as divided into townships, and the name and description of each township."

Section 11 of chapter 25, Comp. Laws of 1885, page 263, is as follows:

"Each county having less than thirty thousand inhabitants shall be divided by the board of county commissioners into three compact districts, as equal in population as possible, numbered respectively one, two, and three, and subject to alteration at least once in three years, and one commissioner shall be elected from each of said districts by the voters of the district as heretofore provided; but if in any county the aforementioned board of county commissioners shall fail to make such division before any election for county commissioners, such failure shall in no case prevent the election of said commissioners."

Section 3 of art. 9 of the constitution has required the election of county commissioners by districts numbered one, two, and three, ever since 1876. Section 2 of art. 9 of the constitution reads as follows:

"The legislature shall provide for such county and township officers as may be necessary."

Sections 1 and 3 of chapter 25, Comp. Laws of 1885, page 262, are as follows:

"That each organized county within this state shall be a body corporate and politic, and as such shall be empowered for the following purposes: *First*, to sue and be sued. *Second*, to purchase and hold real and personal estate for the use of the county, and lands sold for taxes, as provided by law. *Third*, to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants. *Fourth*, to make all contracts, and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate or administrative powers. *Fifth*, to exercise such other and further powers as may be especially conferred by law."

"The powers of a county as a body politic and corporate, shall be exercised by a board of county commissioners."

After the county officers appointed by the governor had qualified, the county of Gray, by the express terms of the statute, "was duly organized." Therefore we think, construing the statutes together bearing upon the question at issue, and making them harmonize, that the commissioners appointed by the governor had the power to divide the county of Gray into commissioner districts, and that the rulings of the contest court and the district court were erroneous. This construction of the statute was lately adopted by this court in the election of the county commissioners of Sherman county, but in that case no written opinion was filed, as it seemed to be conceded by the counsel that the county was properly divided into commissioner districts by the commissioners appointed by the governor.

The arguments against the conclusion we have reached are that if the legislature had any intention that the commissioners and clerk appointed by the governor should perform the duties pertaining to their offices under chapter 25, Comp. Laws of 1885, page 261, relating to county officers, it would not have limited the oath required of them to a faithful performance of the duties prescribed by said chapter 24; that the commis-

sioners appointed by the governor are not required to execute a bond for the faithful discharge of their duties, and that such commissioners are specially empowered to act as a board of canvassers for the first election of township and county officers.

We think the words "herein required," set forth in § 2 of said chapter 24, are broad enough to embrace all duties resulting from the appointment and acceptance under said chapter 24 and acts amendatory thereof; and also the duties to be performed under the statutes that are to be construed with said chapter 24.

Again, if it be true that the commissioners appointed by the governor are not required to give official bonds, such omission in the statute does not carry with it any great force. These commissioners are not expected to serve any great length of time, as the statute requires an early election, after the organization of a county, for the selection of township and county officers. Prior to 1875, all county commissioners were permitted to discharge their duties without giving bonds.

The authorization of the special commissioners to act as a board of canvassers for the first election called after the organization of a county seems to be necessary, as the general act relating to elections does not clearly and distinctly devolve upon the county clerk and commissioners of a county the duty to canvass and declare the result of such an election. For a like reason, § 3 of said chapter 128 imposes upon the special commissioners the duty of dividing their county into suitable and convenient townships. By § 24 of said chapter 25, county commissioners have no authority to create new townships, excepting upon three months' notice, and the presentation of a petition therefor signed by fifty electors. No notice or petition is required to authorize the county commissioners to divide their county into commissioner districts. (Chapter 25, § 11.)

Further, if the act relating to the organization of new counties and its amendments limited the duties of the commissioners and clerk appointed by the governor to the matters therein solely enumerated, their powers would be most lame

and impotent. Disregarding the provisions of said chapter 25,. relating to county officers, the special commissioners and clerk would not be required to hold their offices at the county seat,. and the compensation of these officers would be indefinite and uncertain. If the persons appointed by the governor to act; as commissioners for a county being organized are limited in their duties to matters stated in the act relating to the organ-- ization of new counties and its amendments, then the rights- and duties of the county clerk are limited in the same way;. and, under such acts alone, it would be impossible for a county clerk to perform his duties beneficially or properly.

With the construction we have given to the statutes, we· cannot hold that the commissioners and clerk appointed by· the governor are confined in their duties and powers to those· specifically enumerated in chapter 24, Comp. Laws of 1885,. p. 256, and chapter 128, Laws of 1887. These officers may also exercise the powers conferred by chapter 25, Comp. Laws· of 1885, p. 261, relating to county officers, where such duties are not in conflict with those enumerated in the acts relating· to the organization of new counties.

The judgment of the district court will be reversed, with· direction to that court, also, to reverse the judgment of the· contest court.

All the Justices concurring.