The State, *ex rel.*, v. Osage County.

No. 24,641.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-General, *Plaintiff*, v. A. D. TINDELL et al., as the Board of County Commissioners of Osage County, *Defendants*.

SYLLABUS BY THE COURT.

1. DIVISION OF COUNTY INTO COMMISSIONER DISTRICTS—*Duty Vested Solely in Board of County Commissioners*. Under the provisions of section 2539, General Statutes of 1915, which requires the county board to "meet and divide the county into three commissioner districts, as compact and equal in population as possible," *held*, the duty of determining how nearly the districts shall approximate equality in population and compactness of territory is vested solely in the board, and the courts will not issue the writ of mandamus to control that discretion, except upon a clear showing that it has been abused; and upon that issue the burden rests upon the plaintiff.

2. SAME—*When Action of Board May Be Subject to Review by the Courts*. Not every departure from equality and the number of inhabitants ought to be the subject of review by the courts. It must be a grave, palpable and unreasonable deviation from the standard, and sufficient to convince a fair man that a wholly unnecessary inequality has been intentionally provided for.

3. SAME. The court will not condemn such an order merely on the ground that another could be made conforming with more literal exactness to the statutory requirements.

4. SAME—*The Word "Compact" as Used in Statute Defined and Construed*. The word "compact" has various shades of meaning when used in this connection, and permits the consideration in good faith of existing lines, topography, means of transportation and other factors. It means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest.

5. SAME—*Cities May Be Divided*. No reason appears why a city may not be divided so that one part lies in one district and another part in another district so long as the boundary lines of the district follow the boundaries of the city wards and do not interfere with voting precincts.

6. SAME—*Order of County Commissioners—No Abuse of Discretion*. The commissioners of Osage county on June 26, 1922, made an order which redistricted the county into three commissioner districts. In original proceedings in mandamus to compel the board to set aside its order and make a new one, *held*, upon the facts stated in the opinion, plaintiff has failed to show that there has been such an unreasonable deviation either in population or compactness of territory as to justify mandamus to compel further action.

7. SAME—*Purpose of Creating Commissioner Districts*. Commissioner dis-

tricts are created merely to define the territory from which the voters are to select commissioners; they have no functions to perform as governmental agencies.

8. SAME—*Facts to Be Considered in Determining the Boundaries of Commissioner Districts.* In this case it appears that there was one member of the board who was a candidate for reëlection, and his opponent resides in the extreme northwest section of Superior township as it existed before the order, and that if the township lines had not been changed he would have become a resident of another district and could not have been a candidate. *Held,* that in making the readjustment under these circumstances, the commissioners had a right to take that fact into consideration, and *held further,* that the application for mandamus, not being made until September 23, long after the primary election, the board ought not to be required to eliminate a successful nominee by so arranging the lines of the district wherein he lived as to throw him outside the boundaries if this can be avoided without creating great disparity in population and territorial equality.

9. TOWNSHIPS—*Authority of County Board to Change Boundaries of Townships Without Notice.* Section 2562 of the General Statutes of 1915 authorizes the organization of new townships upon a petition presented to the county board, and provides for notice. *Held,* that it is within the power of the board to alter the lines of a township at any time without a petition or notice of the change.

Original proceedings in mandamus. Opinion filed November 4, 1922. Writ denied.

*Richard J. Hopkins,* attorney-general, *J. K. Rankin, Dennis Madden,* and *W. C. Ralston,* assistant attorneys-general, for the plaintiff.

*A. B. Crum,* and *A. K. Stavely,* both of Lyndon, for the defendants.

The opinion of the court was delivered by.

PORTER, J.: This is an original proceeding in mandamus to compel the board of county commissioners of Osage county to redistrict the county into three commissioner districts. The statute upon which the action is based reads:

"The board of county commissioners shall, on the day of the organization of the board or as soon thereafter as may be possible, meet and divide the county into three commissioner districts, as compact and equal in population as possible, and number them respectively 1, 2 and 3 and subject to alteration at least once every three years," etc. (Gen. Stat. 1915, § 2539.)

This statute was enacted in 1901, but the old statute was in substantially the same language; and it appears that Osage county had never been redistricted since its organization. In April, 1922, certain citizens came before the board and orally presented a petition

for the establishment of new commissioner districts. The commissioners considered the matter until June 7, when the petition was denied. The matter was taken before the attorney-general by those dissatisfied with the refusal of the county board, and he advised the board that it was their duty under the statute to.redistrict the county. It appears that the matter received great publicity throughout the county, was discussed among the people and in the newspapers. On June 26, the board acted upon the advice of the attorney-general and made an order redistricting the county. This action is to compel a further redistricting upon the ground that the one made is contrary to law, in that the districts are not as nearly compact and equal in population as possible, and that the order was capriciously and arbitrarily made for the purpose of promoting the political interests of the present members of the board. It is also claimed that a change made in township lines was illegal because no petition was presented to the board asking for such change and no notice of any change in township lines was given prior to the making of the order. A verified answer has been filed, taking issue with these contentions.

The duty of determining how nearly the proposed districts shall approximate equality in population and compactness of territory is vested in the board of county commissioners. The real question for our consideration is whether the order redistricting the county was an abuse of that discretion. In *Hayes v. Rogers*, 24 Kan. 143, it was said:

"The statute gives the commissioners full power to make the change . . . . Large powers are in this respect intrusted to them, as well as an almost unlimited discretion." (pp. 145, 146.)

It goes without saying that the courts will not issue the writ of mandamus to control the discretion vested in the board. Plaintiff in order to recover must show an abuse of that discretion; and on this issue, plaintiff has the burden.

Attached to the petition is a map showing the boundary lines as they existed prior to the order complained of. The population of Osage county is 20,010, and in order to divide it into three districts as nearly equal in population as is mathematically possible would give to each district the population of 6,670. The population of one district under the order of June 26 is 6,671. The population of another district is 411 less than one-third that of the county. Another district contains 7,080 or 410 in excess of one-third the popu-

lation of the county.   Under the old order as it existed district No. 1 contained a population of 9,092 and comprised a territory of 220 square miles, embracing within its limits the cities of Osage City, Burlingame and Scranton.   The population of that district was far in excess of one-third the county's population.   Old district No. 2 comprised 232 square miles with a population of 5,651, and district No. 3, which contained 268 square miles, had a population of 5,266. It appears that before the final action was taken by the defendants more than two months had elapsed between the presentation of the first petition, that during that time the question received much discussion among the people and that numerous articles for and against the proposed change were published in the newspapers.   Delegations came before the board from Elk, Barclay, Superior and Olivet townships protesting against any redistricting of the county.   It appears further that Osage county contains a large number of what is known as "trouble-making" streams—110 creek, Salt creek, Tequa creek, Long creek, Dry creek, Dragoon creek, Rock creek, and the Marais des Cygnes river.   One plan of redistricting suggested by the petitioners would, if followed out, have placed in one district all of these streams.   Among the things to be taken into consideration by the county board was not only the area and population of all the districts but the density of population, the effect resulting from a change in lines as they existed, the possibility of the necessity for the creation of new election districts.   Besides, a redistricting of the county would require some consideration to be paid to the means of transportation and communication in the various districts.   It may be said that the controlling question presented in this case is not a novel one.   The statutes of most, if not all, the states contain similar provisions by which legislatures have vested in boards of county commissioners or similar bodies the duty and power to create new districts out of old, as judicial districts, and districts embracing parts of a county.   These statutes usually contain similar provisions, to the effect that the districts created shall be comprised of adjacent territory as nearly compact as possible and with a population as nearly equal as possible.   It has been held that the word "compact" in such statutes means closely united, and that the word itself has various shades of meaning, when used in this connection.   Again, it has been held that the provision with respect to compactness permits the consideration, in good faith, of existing

lines, topography, means of transportation and other factors. (*Matter of Dowling*, 219 N. Y. 44.)

In *The People v. Thompson*, 155 Ill. 451, it was said:

". . . we are of the opinion that as used in the constitution, and applicable to mere territorial surface, the word 'compact' means 'closely united,' and that the provision that districts shall be formed of contiguous and compact territory means that the counties, or subdivisions of counties, (when counties may be divided,) when combined to form a district, must not only touch each other, but be closely united, territorially." (p. 478.)

With respect to the complaint that the order divides the city of Osage City into three parts and the city of Lyndon into two parts, it appears that the order follows the boundaries of the wards of these cities, which are the boundary lines of voting precincts. Unless the word "compact" as used in the statute means that the residents of each district shall be closely united in interest we see no substantial reason for an objection to the order because streets of a city are used as boundary lines, provided, of course, the voting precincts are not divided. We think the word "compact" as used in the statute means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest. Besides, we can conceive of no reason why a city may not be divided so that part of it lies in one commissioner district and part in another. In fact that condition obtains in many of the counties where there are large cities. The city of Kansas City, Kan., lies in three different commissioner districts. The boundary lines of the district in every case follow the boundary lines of the city wards so as not to interfere with the voting precincts. It is true that the same statute which authorizes the division of a county into commissioner districts contains a proviso that in all counties where there are three representative districts they shall constitute the commissioner districts without any action on the part of the county board, so that that situation once being established, the board of county commissioners would be powerless to make any change in the commissioner districts because the legislature has made the representative districts identical with the commissioner districts. The matter is referred to merely as an illustration of the fact that no serious inconvenience results from having parts of a city in one commissioner district and part in another.

In the petition there is a complaint that the order of the board of June 26 makes what is called a "goose neck" of a part of Superior township, which is added to the rest of the second district. This

strip of territory, however, appears to be four miles wide and six miles long. In answer to this objection it is asserted that the north half of Superior township was joined to the second district in order to make all the districts as nearly equal in population as possible; that the excess of population in the old first district had to be added elsewhere, and that if all of Superior township had been added to either of the other districts there would have resulted again an excess of population in one district. No doubt it frequently happens that in an attempt to secure compactness of territory and equality of population a compliance with both requirements renders mathematical exactness impossible. Thus, in a case in which the apportionment was not upheld, it was said:

"The requirement of sec. 4, art. IV, Const., that assembly districts shall 'be in as compact form as practicable,' being of lesser importance, may to some extent yield in aid of securing a nearer approach to equality of representation." (*The State, ex rel., Lamb v. Cunningham,* 83 Wis. 90, syl. ¶ 7.)

The defendants contend that if there has been a failure to create districts equally compact in the order of June 26, it follows from an attempt to comply with the other provision that the district shall contain an equality of population, and the pertinent question is asked by the defendants, "If there has been a deviation from either of these requirements, how much of a deviation must exist before it can be said that the board abused its discretion in the matter?"

One of the cases cited by the defendants in *Baird et al. v. Supervisors, ctc.,* 138 N. Y. 95, where it was said in the opinion:

"It is not every departure from equality in the number of inhabitants that can be interfered with or that ought to be the subject of review by the courts. . . . It must be a grave, palpable and unreasonable deviation from the standard, so that when the facts are presented argument would not be necessary to convince a fair man that very great and wholly unnecessary inequality has been intentionally provided for." (pp. 113, 114.)

In *People v. Thompson,* supra, it was said: "Who then must finally determine whether a district is as compact as it could or should have been made?" (p. 480.) The answer is, the board of county commissioners.

The rule adopted by the courts generally is that if men of judgment and discretion may fairly differ with respect to relative weight of difference of population and compactness, the question belongs to the legislature and the courts will not interfere. In *Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492, it was said:

"Discretion is defined, when applied to public functionaries, to be 'a power

or right, conferred upon them by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others.' (*Judges of the Oneida C. P. v. The People,* 18 Wend. 99.) It perverts and destroys the meaning of the word to hold that exercise of discretion may be reviewed or controlled by some other person or tribunal than the person on whom it is conferred." (p. 372.)

The plaintiff has filed with the court a map labeled "As it might have been," showing how the county could have been divided into three districts more compactly and with closer equality of population—and leaving the towns of Carbondale and Scranton in one district, Osage City in another, and Lyndon, Quenemo and some other small cities in a separate district. Doubtless another map could be made showing the possibility of redistricting the county so that each district would contain more nearly an equality of population and compactness of territory than would even result from the plan suggested. The legislature has placed the discretion in the board of county commissioners and left it with the board to finally determine whether a district is as compact as it could or should have been made. In *The People v. Carlock,* 198 Ill. 150, it was said:

"The attempt on the part of the court to condemn an apportionment act merely on the ground an apportionment conforming more nearly to the constitutional requirements, in which a discretion was involved, could be made, would be to invade the province of the legislative department of the State." (p. 157.)

The conclusion we have reached is that the plaintiff has failed to show that there has been such an unreasonable deviation, either in population or compactness of territory, as would justify mandamus to compel further action.

There remains the contention that the board acted from personal and selfish motives in making the order and redistricting the county in order to secure the reëlection of one of its members. It appears that the defendant, Tindell, is the only member of the board who was a candidate for reëlection, and that his opponent resides in the very northwest section of Superior township as it existed before the order complained of was made. If the lines had not been changed and this section had remained in Superior township it would have become a part of the second district, and the opponent could not become a candidate for election in the first district. For this reason the township line was changed to leave the opponent in the first district—the section upon which he lives being placed in Grant township by the order of June 26.

The State, *ex rel.*, v. Osage County.

Commissioner districts are created merely to define the territory from which the voters are to select commissioners; they have no functions to perform as governmental agencies. At the time the order was made, candidates for commissioner of the first district had announced themselves; and we think that, in making the readjustment under these circumstances the commissioners had a right to take that fact into consideration. This application for a mandamus was made September 23, its purpose being to effect a change in the districts that would be operative at the election to be held November 7. By action taken midway of the legal process for selection of the new commissioner, the board cannot be required to eliminate any successful nominee by so arranging the lines of the district wherein he lived as to throw him outside the boundaries, if this can be avoided without creating great disparity in the population of the districts, even though by such proceeding a nearer approach might be had to mathematical equality, and the division lines might be made to contain fewer angles.

A writ of mandamus does not create a duty. It merely enforces one already in existence. It may be doubted whether the commissioners have even a right, after permitting whole district boundaries to remain unchanged until the holding of the primary, to get rid of a successful candidate who is possibly distasteful to them, by the expedient of changing the lines after he has won his place on the party ticket.

There is no force in the contention that the change in the township lines by which certain territory was taken from Grant township and added to Superior township is void because there was no petition requesting such a change. Section 2562, General Statutes of 1915, has no application to the mere alteration of township lines. It applies only to organization of new townships. It is within the power of the board to alter the lines of a township at any time and without a petition asking such action. Section 2575, which is part of the same act, provides that when a new township is organized, or when the boundaries of a township are altered, a map or plat must be filed showing the change. The statute has been complied with in the present case by the filing of a plat showing the changes made in the township lines.

From what has been said it follows that the writ is denied.

BURCH, J., dissents.