(835 P.2d 692)

No. 68,007

NORMAN JUSTICE, *et al.*, *Appellees*, v. BOARD OF COUNTY COMMISSIONERS OF WYANDOTTE COUNTY, KANSAS, *Appellant*.

Opinion filed June 3, 1992.

*David M. Cooper*, assistant county counselor, for the appellant.

*Michael J. Peterson* and *J.R. Russell*, of Kansas City, for the appellees.

Before BRISCOE, C.J., REES and Brazil, JJ.

BRISCOE, C.J.: The Board of County Commissioners of Wyandotte County (Board) appeals the district court's order which invalidated the Board's redistricting of Wyandotte County's three county commission districts.

This action has had a very short life. Plaintiffs' petition was filed on March 17, 1992. After denial of the Board's motion to dismiss and motion to conduct limited discovery, the district court scheduled the case for trial on April 22, 1992. Trial was held on that date over the Board's objection. Under direction of the Board, counsel for the Board did not participate in the trial. The trial lasted for less than two hours and, later that same day, the court filed the order from which this appeal is taken. The district court sought to timely resolve this action because the filing deadline for candidates for county commissioners in Wyandotte County is June 10, 1992.

The three named plaintiffs in this action, Norman Justice, Chester Owens, and Clyde Townsend, are longtime residents of Wyandotte County and of Commission District 2 within that county. In their petition, plaintiffs alleged the Board's March 17, 1992, redistricting, which was approved by a majority of the three-member board, violated the voting rights of the black minority of Wyandotte County. Specifically, plaintiffs alleged the new dis-

trict lines were drawn with the intent to help retain two of the incumbent commissioners and to defeat another. Plaintiffs alleged the new districts violated K.S.A. 19-204(a) because they were not as compact and equal in population as possible. Plaintiffs argued the redistricting had the net effect of denying certain citizens of Wyandotte County the benefit of their vote because the strength of the black majority in the 2nd District has been diluted by the Board's action. By their petition, plaintiffs asked the district court to redraw the three county commissioner districts and to award damages.

The Board filed a motion to dismiss plaintiffs' petition for lack of jurisdiction. Plaintiffs' petition did not state a jurisdictional basis for their action against the Board. The Board argued the district court had no jurisdiction to hear an action under either the Voting Rights Act, 42 U.S.C. § 1973 *et seq.* (1988), or K.S.A. 19-223. The Board argued federal courts have exclusive jurisdiction over cases under the Voting Rights Act. The Board also argued plaintiffs had failed to comply with the requirements of 19-223 because they had failed to serve written notice of the appeal on the clerk of the Board and to execute a bond.

The district court granted the Board's motion to dismiss for lack of jurisdiction under the Voting Rights Act, concluding actions brought pursuant to the Act are within the exclusive jurisdiction of the federal courts. The court denied the Board's motion to dismiss for failure to comply with 19-223 by ruling the statute was inapplicable because the decision challenged by plaintiffs was legislative in nature. The court ruled 19-223 applies only to the review of board decisions which are judicial or quasi-judicial in nature.

Although the court refused to dismiss plaintiffs' action for lack of jurisdiction, the court did not identify in any of its orders how it had jurisdiction. In its memorandum decision entered after trial, the court stated K.S.A. 77-621 governed its scope of review. However, that statute is a part of the Act for Judicial Review and Civil Enforcement of Agency Actions and is intended to apply to state agencies. Decisions rendered by political subdivisions of the state are not subject to review under this Act. K.S.A. 77-602(k). Neither the Act nor the specific portion of the Act cited

by the district court would provide the court with jurisdiction to review a decision by a board of county commissioners.

In its ruling on the merits, the district court specifically ruled the population of the three proposed districts was as equal as possible. Although the court noted the proposed districts divided wards but not precincts, no specific ruling was made regarding compactness. The sole basis for the court's ruling vacating the Board's March 17, 1992, redistricting was the court's conclusion that the Board's action was untimely under the plain language of K.S.A. 19-204. The court reached this conclusion after finding the present Board was "organized" and commenced business on the Monday following the general election in November 1990.

The Board raises two issues on appeal: (1) whether the district court had jurisdiction pursuant to 19-223; and (2) whether the district court erred in setting aside as untimely the Board's action creating new county commission districts.

K.S.A. 19-223 states:

"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

The Board argues 19-223 applies to plaintiffs' appeal of the Board's decision but cannot provide the district court with jurisdiction because plaintiffs failed to serve a written notice of appeal on the Board's clerk and failed to file a bond. Plaintiffs concede they are guilty of these procedural shortcomings, but argue 19-223 is not applicable to their action because they are seeking review of a legislative decision. Plaintiffs contend the court had jurisdiction to act in this case under its equitable powers.

As both parties agree the requirements of 19-223 were not satisfied and our review of the record supports that conclusion, it is clear the district court did not obtain jurisdiction under 19-223. The parties present no other statutory authority for the district court's review of the Board's redistricting action, and by our own search we have found none.

Did the district court have equitable jurisdiction to grant equitable relief to plaintiffs? Plaintiffs did not seek equitable relief. In their prayer, they asked the court to redraw the district lines and award damages, attorney fees, and costs. However, in *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 998, 667 P. 2d 879 (1983), the court stated:

"The court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. [Citation omitted.] It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. [Citation omitted.]"

Plaintiffs allege in their petition that the Board acted illegally. If true, that claim would entitle them to equitable remedies. As stated in *Brinson v. School District*, 223 Kan. 465, 467, 576 P.2d 602 (1978):

"Courts have no inherent appellate jurisdiction over the official acts of administrative officials or boards except where the legislature has made some statutory provision for judicial review. [Citations omitted.] *In the absence of a statutory provision for appellate review of an administrative decision no appeal is available but relief from illegal, arbitrary and unreasonable acts of public officials and boards can be obtained by using such equitable remedies as quo warranto, mandamus, or injunction.* [Citation omitted.]" (Emphasis added.)

Based upon these authorities, we conclude the district court had jurisdiction to grant equitable relief to plaintiffs. We proceed to address the merits of the appeal.

The Board contends the court erred in ruling the redistricting was not completed in a timely fashion under 19-204. As part of its argument, the Board argues it was organized on January 17, 1992.

The Board's power and duty to redistrict is governed by K.S.A. 19-204(a), which states:

"The board of county commissioners shall, on the day of the organization of the board or as soon thereafter as may be possible, meet and divide the county into three commissioner districts or such number of districts as is prescribed by resolution of the board, as compact and equal in population as possible, and number them, subject to alteration at least once every three years."

The court applied this statute and determined, first, that the board was organized in November 1990 and, second:

"The real problem here is the flat ignoring by the majority of this board of commissioners of the plain words of the statute:
'Shall on the day of the organization of the board, or as soon thereafter [as] may be possible, meet and divide the county into three commissioner districts . . . .' "

In short, the district court interpreted the statute to mean the Board had to redistrict after its organization in 1990 and its delay until March 17, 1992, was in effect arbitrary and capricious.

Although 19-204 does not define organization, K.S.A. 19-219 describes the organization process:

"It shall be the duty of the board of county commissioners to meet on the second Monday in January of each year, or within thirty (30) days thereafter, and organize by electing one of their number chairman for a term of one (1) year who shall preside at that meeting and at all other meetings during such year, if present; but in case of the chairman's absence, a temporary chairman may be elected from the members present; and in case of the death or resignation of the chairman of the board, the board may, at any regular or special meeting after such vacancy, elect one of their number chairman to fill the vacancy."

The rules of statutory construction are well known:

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citations omitted.]" *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

Reading 19-204 and 19-219 together, it is clear the organization referred to in 19-204 is something that must occur annually. The annual organization must occur even though the same individuals may be longstanding members of the board. The district court's apparent conclusion that the Board in this case was organized in 1990 was based upon plaintiffs' arguments that the same three commissioners had been in office since 1990 and, therefore, the court should look to when it was first organized. This argument ignores the plain language of 19-204 and 19-219. Further, it is clear that, under 19-204, each county is not subject to redistricting every year; rather, under 19-204, each county is subject to redistricting at least once every three years. See *Andrews*, 207

Kan. at 552. In the years of redistricting, it is to be done as early in the year as possible, presumably to prevent as much confusion as possible for ensuing November elections.

Here, the Board argues it was organized on January 17, 1992. Although there is no evidence in the record of such organization, this court cannot presume the Board violated the law. In the absence of proof to the contrary, we must assume the Board followed the law and organized in 1992 as required by 19-219. See *Kipp v. Goffe & Carkener*, 144 Kan. 95, 105-06, 58 P.2d 102 (1936). Thus, the question becomes whether the March 17, 1992, redistricting was timely.

The appropriate standard of review for the district court and for this court on appeal is whether the Board abused its discretion in approving the redistricting plan. *Osage County*, 112 Kan. at 258. Further, an appellate court has limited judicial review of legislative acts to determine "whether the Board has the statutory authority to enter the order which it made." *In re Appeal of City of Lenexa*, 232 Kan. 568, 576, 657 P.2d 47 (1983). In this case, the Board can be said to have abused its discretion if it acted illegally or if no reasonable person would take the position of the Board. See *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988).

K.S.A. 19-204 requires that redistricting be done "on the day of the organization of the board or as soon thereafter as may be possible." In challenging the Board's action, plaintiffs offered no proof that the redistricting could have been done any sooner than it was, except to argue that 1990 census figures were available in 1991. Assuming arguendo that the figures were available in 1991 and the Board could have redistricted in 1991, that alone does not invalidate the 1992 redistricting. The Board was presumably organized in January 1992 and the redistricting was approved approximately two months later. A reasonable person could conclude two months is not an excessive delay and that the redistricting was done as soon as possible after the Board had organized, as authorized by 19-204. The district court erred in ruling the redistricting was invalid.

Plaintiffs argue in their appellate brief that the redistricting was invalid for a number of other reasons, including: (1) lack of proper records of the Board's actions; (2) unfair denial of a can-

didate's franchise and right to run for office; (3) violation of the Kansas and United States Constitutions; and (4) the redistricting was the result of the commissioners' desire to benefit themselves at the expense of the electorate.

The district court's findings of fact in this case do not provide a basis to support any of these claims. Determinations of fact, unappealed from, are final and conclusive. See *Crawford v. Prudential Ins. Co. of America*, 245 Kan. 724, 728, 783 P.2d 900 (1989). " 'Generally, a litigant must object to inadequate findings and conclusions of law in order to give the trial court an opportunity to correct them. [Citation omitted.] In the absence of an objection, omissions in findings will not be considered on appeal. [Citation omitted].' " *U.S.D. No. 352 v. NEA-Goodland*, 246 Kan. 137, 140, 785 P.2d 993 (1990). Plaintiffs have not cross-appealed nor have they asserted that the court's findings of fact were inadequate because they failed to address all of their claims. Thus, this court " 'must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court, and must disregard any conflicting evidence or other inferences which might be drawn therefrom.' " *Wichita Fed'l Savings & Loan Ass'n v. Black*, 245 Kan. 523, 530, 781 P.2d 707 (1989).

The district court's ruling does leave one of plaintiffs' claims unresolved. K.S.A. 19-204(b) requires that commissioner districts be "as compact and equal in population as possible." Plaintiffs complained the redistricting plan was invalid because it violated the mandates of 19-204, which could include the compactness issue. The court ruled:

"On the issue of compactness, it is apparent that the proposed redistricting does not divide precincts, but it clearly splits and divides wards. In *State ex rel. v. Osage County*, 112 Kan. 256, the Court said:

'No reason appears why a city may not be divided so that one part lies in one district and another part in another district so long as the boundary lines of the district follow the boundaries of the city wards and do not interfere with voting precincts.' [Citations omitted.]"

The court specifically found that wards 1, 9, 10, 11, 12, 13, and 14 were split under the March 17, 1992, redistricting plan. The Board argues wards have been split by commissioner districts for years. The maps of Wyandotte County included in the record

indicate wards are split under both the old and the new district boundaries. The question of whether the splitting of wards violated 19-204(b) is a question of law. An appellate court's review of conclusions of law is unlimited. *U.S.D. No. 352*, 246 Kan. at 140. We have found no case holding that a finding that wards have been split requires invalidation of a redistricting plan, although admittedly *Osage County*, 112 Kan. 256, Syl. ¶ 5, does suggest that result by stating:

"No reason appears why a city may not be divided so that one part lies in one district and another part in another district so long as the boundary lines of the district follow the boundaries of the city wards and do not interfere with voting precincts."

The discussion of compactness in the body of the opinion includes the following statements:

"Unless the word 'compact' as used in the statute means that the residents of each district shall be closely united in interest we see no substantial reason for an objection to the order [dividing Osage City into three districts] because streets of a city are used as boundary lines, *provided, of course, the voting precincts are not divided*. We think the word 'compact' as used in the statute means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest. Besides, we can conceive of no reason why a city may not be divided so that part of it lies in one. commissioner district and part in another." (Emphasis added.) 112 Kan. at 260.

This discussion makes it clear the court was concerned with splitting voting precincts.

The statute does not mention wards or voting precincts. Here, the voting precincts are not divided in the Board's recent redistricting. Absent a finding by the district court that the Board acted with illegal motive in drawing the new lines, we conclude the new districts are "compact" under 19-204(b) even though the wards are divided. Given the large size and elongated shapes of some of the wards in Wyandotte County, if ward lines are followed to establish district boundaries, it would become more difficult to achieve districts which are equal in population and also compact. Since the voting precincts remain undivided, there appears to be no reason why a city ward may not be divided so that part of it lies in one commissioner district and part in another.

The district court's order invalidating the Board's redistricting of Wyandotte County's three county commission districts is reversed.

BRAZIL, J., concurring: I concur that, if we must reach the merits, we must find that the district court erred in the interpretation of K.S.A. 19-204 and reverse.

However, I would find that this appeal should have been taken pursuant to K.S.A. 19-223 for a limited review, as this court held in *Linsea v. Board of Chase County Comm'rs*, 12 Kan. App. 2d 657, 753 P.2d 1292, *rev. denied* 243 Kan. 779 (1988). Failing to comply with the requirements of K.S.A. 19-223, plaintiffs have failed to perfect their appeal, and I would dismiss this appeal for lack of jurisdiction.

*Brinson v. School District*, 223 Kan. 465, Syl. ¶ 1, 576 P.2d 602 (1978), states:

"The right to an appeal in this state is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken."

While I understand that *Brinson* recognizes the court's inherent power for limited review of administrative decisions absent statutory authority, this is not such a case. K.S.A. 19-223 provides the authority and procedure for appeal from the Board's decision.