The Honorable Al Ramirez Senator, Fifth District 13848 Harbor Drive Bonner Springs, Kansas 66012
Dear Senator Ramirez:
As senator for the fifth district, you request our opinion regarding whether a board of county commissioners acted legally in rearranging county commissioner districts. You also ask whether a person elected to the board of county commissioners was legally qualified to be elected to that office and may continue to serve in such capacity. Your request is based on a rather complicated set of facts which are set forth as follows:
 (1) In March, 1992, the board of county commissioners for Wyandotte county exercised its authority under K.S.A. 19-204 and rearranged the districts of the county commissioners. (This action was the subject of litigation in Justice v. Board of Wyandotte County Commissioners, 17 Kan. App. 2d 102, rev. denied 251 Kan. 938 (1992).)
 (2) On November 3, 1992, Mr. Richard Kaminski resided at 2209 North 78th Terrace, such residence being located in a county commissioner district other than the third district.
 (3) On November 3, 1992, Mr. Kaminski was elected to serve as county commissioner for the third district, a district in which he did not reside.
 (4) On December 30, 1992, Mr. Kaminski declared as his legal residence 1900 North 70th, A-202, a residence within the third district.
 (5) On January 11, 1993, Mr. Kaminski took office as the county commissioner for the third district.
 (6) On February 9, 1993, the board of county commissioners adopted resolution no. 3008 rearranging the county commissioner districts, such resolution to become effective February 22, 1993. As a result of the alteration, Mr. Kaminski's former residence was included within the third district.
 (7) On March 3, 1993, Mr. Kaminski declared as his legal residence 2209 North 78th Terrace, the residence he occupied at the time of his election to the board of county commissioners.
Apart from making Mr. Kaminski's former residence a part of the third district, the actions of the board of county commissioners had the effect of disqualifying a portion of the electorate of Wyandotte county from casting votes for a member of the board of county commissioners. Pursuant to board action in 1992, a portion of the third district was moved to the second district. The office of county commissioner in the second district was not subject to election until 1994, and residents of the second district did not cast a ballot in 1992 for the office of county commissioner. Following adoption of resolution no. 3008, a portion of the area previously moved to the second district was moved back to the third district. The office of county commissioner in the third district will not be subject to election until 1996. Therefore, a portion of the electorate of Wyandotte county last voted in an election for county commissioner in 1988 and, barring further rearrangement of the districts, will not be eligible to vote in an election for county commissioner until 1996.
Under this factual situation, you ask whether Mr. Kaminski was qualified to be elected to and accept the office of county commissioner for the third district. You also ask whether the board of county commissioners for Wyandotte county violated state law or provisions of the federal and state constitutions in adopting resolution no. 3008.
Pursuant to K.S.A. 19-202:
 "(a) The board of county commissioners of each county shall consist of three (3), five (5) or seven (7) qualified electors.
 "(b) One (1) county commissioner shall reside in and represent each commissioner district within the county." (Emphasis added.)
(The legislature amended K.S.A. 19-202 through enactment of L. 1993, ch. 250, sec. 2, adding a provision requiring a person who is a candidate for nomination or election to the office of member of the board of county commissioners be a resident of the district during such candidacy as well as during the term of office. See K.S.A. 1993 Supp. 19-202. However, as the election of Mr. Kaminski occurred in November, 1992, and the above provision was not effective until July 1, 1993, see L. 1993, ch. 250, sec. 5, the provision was not applicable at the time of election of Mr. Kaminski. Our analysis regarding the residence requirement is therefore confined to the provisions of K.S.A. 19-202 as in effect during the candidacy and election of Mr. Kaminski.)
The residence requirement applicable to a person elected to the office of county commissioner has been the subject of several opinions of the Attorney General. Consistently, it has been determined that state law requires that each member of the board of county commissioners be a qualified elector and a resident of the district within the county that the member represents. Attorney General Opinions No. 86-121; 79-267; 76-203. A qualified elector is a citizen of the United States who has attained the age of 18 years and who resides in the voting area in which the citizen seeks to vote. Kan. Const., art. 5, sec. 1. The residence requirement is a continuing, as well as preliminary, qualification for the office of county commissioner. Attorney General Opinions No. 86-121; 79-267. Therefore, before a person may take the oath of office and begin service as a member of the board of county commissioners, the person must be a qualified elector and a resident of the district, and continue to be so during the term of office. However, residence in the district need not exist at the time of filing of candidacy, or nomination, or election. Attorney General Opinions No. 79-267; 76-203.
For the purpose of determining the residence of a person offering to vote, residence is defined as meaning "the place adopted by a person as such person's place of habitation, and to which, whenever such person is absent, such person has the intention of returning." K.S.A. 25-407. Residence is similarly defined in the rules of statutory construction, with the additional proviso that "[w]hen a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." K.S.A. 1993 Supp. 77-201 Twenty-third. Kansas law permits a person to have only one residence for voting purposes. Attorney General Opinion No. 88-149. A person may change his residence either temporarily or permanently, and whether he does so, or which he does, is determined by his acts and intentions. Arnette v. Arnette,162 Kan. 677, 680 (1947); see Irvin v. Irvin, 182 Kan. 563, 566 (1958). Establishing or changing a residence involves two elements: the act of being present at a locality; and the intent to return to that locality when absent. Littell v. Millemon, 154 Kan. 670, 675 (1942). The element of intent may arise at the time of removal to the new locality, or may arise subsequently. The length of time that a person remains at the locality is not important, except as indicia of intent. Irvin,182 Kan. at 567.
Applying the above analysis to the factual situation you present, we determine that Mr. Kaminski was eligible for election to the office of member of the board of county commissioners for the third district in November, 1992, despite the fact that Mr. Kaminski was not a resident of the third district at the time of filing of candidacy or election. However, before Mr. Kaminski could take the oath of office and begin service as a member of the board of county commissioners for the third district, Mr. Kaminski was required to establish residence in the third district. The establishment of residence in the third district by Mr. Kaminski was dependent upon the intention of Mr. Kaminski. The issue of whether Mr. Kaminski actually established residence within the third district is a question of fact. The facts presented state that Mr. Kaminski established residence in the third district prior to taking the oath of office and beginning service as a county commissioner. Under such a factual situation, Mr. Kaminski was qualified to take the oath of office and begin service as a county commissioner when the term of office began in January, 1993.
As noted above, residence within the county commissioner district is a continuing qualification for the office of county commissioner. An alteration of the districts of certain governing entities does not affect the qualification of an officer to continue to serve as a member of the board. See K.S.A. 25-2022a (boards of education; "Changes of member district territory and boundaries such that a member of a board of education no longer resides in the member district from which elected or appointed shall not shorten the term of such member."); K.S.A. 72-7504
(state board of education; "Any redistricting of board member districts which results in a board member residing outside of his or her board member district shall not be grounds for removal and shall not disqualify such member from service on the state board for the remainder of the term for which he or she was elected or appointed."); Kan. Const., art. 10, sec. 1 (state legislators; "Bills reapportioning legislative districts shall be published in the Kansas register immediately upon final passage and shall be effective for the next following election of legislators and thereafter until again reapportioned.") However, a similar provision regarding members of a board of county commissioners is not provided. The view that public office is not property has been generally entertained in this country. Taylor v. Beckman, 178 U.S. 548, 576, 20 S.Ct. 890,44 L.Ed. 1187 (1900); Snowden v. Hughes, 321 U.S. 1, 7, 64 S.Ct. 397,88 L.Ed. 1090 (1944). Removal from office as a result of redistricting does not deprive an incumbent of procedural due process where there is notice and a public hearing on the matter. Tarrant County v. Ashmore,635 S.W.2d 417, 422-24 (Tex. 1982), cert. denied, 459 U.S. 1038,103 S.Ct. 452, 74 L.Ed.2d 606 (1982); 63A Am.Jur.2d Public Officers andEmployees sec. 228 (1984). Therefore, the residence of a county commissioner must continue to be within the district which a county commissioner serves in order for the county commissioner to meet the qualifications for office.
We are told that the residence located at 2209 North 78th Terrace became part of the third commissioner district upon the effective date of resolution no. 3008. We do not know whether the residence located at 1900 North 70th, A-202, continued to be included within the third commissioner district. If the rearrangement of commissioner districts resulted in the residence of Mr. Kaminski being located in any commissioner district other than the third commissioner district, Mr. Kaminski would fail to meet the continuing qualification of residence within the third commissioner district.
K.S.A. 1993 Supp. 19-204 provides:
 "(a) Subject to the provisions of K.S.A. 1993 Supp. 19-204a, the board of county commissioners, on the day of the organization of the board or as soon thereafter as may be possible, shall meet and divide the county into three commissioner districts . . . as compact and equal in population as possible, and number them, subject to alteration at least once every three years." (Emphasis added.)
(While the statute was amended after the board's action in March, 1992, the amendment did not alter the substance of the statute as applicable to the facts presented. See L. 1992, ch. 38, secs. 2, 6.)
The organization referred to in K.S.A. 1993 Supp. 19-204 must occur annually. Further, it is clear that, under K.S.A. 1993 Supp. 19-204, each county is not subject to redistricting every year; rather, under K.S.A. 1993 Supp. 19-204, each county is subject to redistricting at least once every three years. Justice, 17 Kan. App. 2d at 107 (1992);see Andrews v. Board of County Commissioners, 207 Kan. 548, 552 (1971). In the years of redistricting, it is to be done as early in the year as possible, presumably to prevent as much confusion as possible for ensuing November elections. Justice, 17 Kan. App. 2d at 108.
A board of county commissioners has the authority to rearrange its commissioner districts by county resolution, provided the commissioners comply with the broad guidelines for redistricting set forth in K.S.A. 1993 Supp. 19-204 and Kansas case law. The board is statutorily required to divide the county into commissioner districts which are as compact and equal in population as possible. As a local unit of government, the board of county commissioners must meet the doctrine of "one person, one vote," applicable through the equal protection clause of the fourteenth
amendment of the United States constitution, in rearranging the commissioner districts. Avery v. Midland County, Texas, 390 U.S. 474,88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Reynolds v. Sims, 377 U.S. 533,84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Additionally, the Kansas Supreme Court has imposed the requirement that the integrity of the boundaries of voting precincts be maintained. Andrews, 207 Kan. at 550. Absent an intentional abuse of discretion, if a board of county commissioners adheres to these guidelines in rearranging its commissioner districts, the commissioners may rearrange the commissioner districts as it sees fit. Attorney General Opinion No. 86-121; see Attorney General Opinion No. 89-25.
 "The appropriate standard of review for the district court and for this court on appeal is whether the Board abused its discretion in approving the redistricting plan. Osage County, 112 Kan. 258. Further, an appellate court has limited judicial review of legislative acts to determine `whether the Board has the statutory authority to enter the order which it made.' In re Appeal of City of Lenexa, 232 Kan. 568, 576, 657 P.2d 47 (1983). In this case, the Board can be said to have abused its discretion if it acted illegally or if no reasonable person would take the position of the board. See Hoffman v. Haug, 242 Kan. 867, 873, 752 P.2d 124 (1988)." Justice, Kan. App. 2d at 108.
By resolution dated February 9, 1993, to become effective February 22, 1993, the board rearranged the boundaries of the commissioner districts. This occurred earlier in the calendar year than did the previous rearrangement reviewed in Justice. While the previous rearrangement resulted in the division of wards but not precincts, Justice,17 Kan. App. 2d at 105, the plan for rearrangement of the commissioner districts set forth in resolution no. 3008 appears to maintain the integrity of both wards and precincts. The action took place within three years of the previous rearrangement of the districts. No question regarding whether the commissioner districts established in resolution no. 3008 are as compact and equal in population as possible is raised. Under these circumstances it is determined that the board of county commissioners for Wyandotte county has not exceeded its authority under K.S.A. 1993 Supp. 19-204 by adopting resolution no. 3008.
The right to vote in federal elections is conferred by section 2 of article 1 of the United States constitution. While the right to vote in state elections is not expressly guaranteed as is the right to vote in federal elections, it has generally been held that the right to vote in state elections is likewise established and guaranteed by the United States constitution. Harper v. Virginia State Board of Elections,383 U.S. 663, 665, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Lassiter v.Northampton County Board of Elections, 360 U.S. 45, 51, 79 S.Ct. 985,3 L.Ed.2d 1072 (1959). That right is subject to the imposition of state standards that are not discriminatory on account of race, color, or previous condition of servitude, sex, and age in the case of citizens 18 years of age or older, U.S. Const., Amend. XV, Amend. XIX, Amend. XXIV, Amend. XXVI; see Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775,13 L.Ed.2d 676 (1965); Smith v. Allwright, 321 U.S. 649, 657, 64 S.Ct. 757,88 L.Ed.2d 987 (1944); Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573,48 L.Ed. 817 (1904); United States v. Cruikshank, 92 U.S. 542, 555-56,23 L.Ed. 588 (1876); United States v. Reese, 92 U.S. 214, 217-18,23 L.Ed. 563 (1876), and do not contravene any restriction that congress pursuant to its constitutional powers has imposed. Harper,383 U.S. at 665-66; Lassiter, 360 U.S. at 51. See 18 U.S.C. § 591 etseq.; 42 U.S.C. § 1971 et seq. A governing unit may legitimately restrict the right to participate in its political processes to persons who have established residence within its borders. Holt Civic Club v.Tuscaloosa, 439 U.S. 60, 68-69, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978);Evans v. Cornman, 398 U.S. 419, 421, 90 S.Ct. 1952, 26 L.Ed.2d 370
(1970); Carrington, 380 U.S. at 91; Pope, 193 U.S. at 633-34. See Kan. Const., art. 5, sec. 1.
Based on the information provided, it is unclear as to whether all the electors who were transferred from the third commissioner district to the second commissioner district were among the electors transferred back to the third commissioner district. Regardless, it appears the electors subject to the actions of the board of county commissioners for Wyandotte county were not members of a particular racial group, sex, or age group. Absent such a make-up, protections afforded by the provisions of the United States and Kansas constitutions and federal and state law are not applicable. Under such circumstances, a rearrangement of county commissioner districts does not result in an unconstitutional or unlawful action despite the fact that a portion of the electorate is disqualified from casting votes for a member of the board of county commissioners.
In review, because Mr. Kaminski was elected as a member of the board of county commissioners prior to enactment of L. 1993, ch. 250, sec. 2, Mr. Kaminski was required to be a resident of the commissioner district at the time of taking the oath of office, but not at the time of filing of candidacy or the time of election. If Mr. Kaminski succeeding in moving his residence to the third commissioner district, he was then qualified to take the oath of office and begin service as the county commissioner for the third district. Based on the information provided, it appears the board of county commissioners for Wyandotte county operated within its authority in enacting resolution no. 3008.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS:jm