Randall W. Weller Paradise City Attorney 105 E. Cherry, P. O. Box 159 Hill City, Kansas 67642
Dear Mr. Weller:
As legal counsel for the City of Paradise, you request our opinion regarding whether the member districts established by the Board of County Commissioners of Russell County meet statutory requirements.
The Board of County Commissioners of Russell County is comprised of three members, each representing a separate member district. Member District No. 3 is comprised of three adjacent townships that are located along the northern and eastern boundaries of the County. Member District No. 2 consists of one township that is located in the northwest corner of the County. Member District No. 1 includes the six remaining townships that are in the southern and western portions of the County. Member District No. 1 surrounds the City of Russell. The City, however, is divided among the three commissioner districts, with a section of the eastern part of the City dedicated to Member District No. 3, the northwest portion designated as part of Member District No. 2, and the southern part of the City joining Member District No. 1. The result is that Member Districts No. 2 and No. 3 include territory that is not contiguous.
A board of county commissioners is required to organize annually.[1]
 "[T]he board of county commissioners, on the day of the organization of the board or as soon thereafter as may be possible, shall meet and divide the county into three commissioner districts or such number of districts as is prescribed by resolution of the board, as compact and equal in population as possible, and number them."[2]
We have not received the population figures for the member districts, nor a map showing the voting precincts of the County. It is our understanding that there is no allegation of a violation of the Voting Rights Act.[3] Our review, therefore, is limited to determining whether the member districts drawn by the Board of County Commissioners of Russell County are "compact."
The requirements that member districts of a county commission be compact and equal in population have applied since the original organization of several of the State's counties.[4] The Kansas appellate courts have been consistent in their interpretations of the obligations of a county commission to achieve member districts that are "compact and equal in population" when redistricting its member districts as required by State law.[5] The standard for determining whether member districts are compact was established in State ex rel. v. Bd. ofCounty Comm'rs of Osage County.[6]
 "The word `compact' has various shades of meaning when used in this connection, and permits the consideration in good faith of existing lines, topography, means of transportation and other factors. It means that the territory shall be closely united, and not necessarily that the residents of each district shall be united in interest."[7]
While the Kansas appellate courts have consistently recited the standard for compactness, actual application of the standard has been rare as the cases generally concentrated on other requirements to be met by a county commission that is redistricting its member districts.[8]
Even in Osage County, consideration of compactness appeared to be an afterthought as the Court focused on the county commission's authority to divide cities in order to bring member districts into compliance with the requirement of "equal population" among the districts.
The standard was applied in Andrews v. Bd. of County Comm'rs of CowleyCounty.[9] In that case, the Kansas Supreme Court reviewed the member districts established in Cowley County. The member districts included the following territory:
 "District #1 includes 7,157 people from Winfield plus 4,369 people from eleven rural townships. The rural townships generally lie in a northeasterly direction from Winfield and extend to the east and north boundaries of the county. The district has a total population of 11,526 people. This is 287 persons less than the goal of an ideal district which would contain exactly one-third of the total county population.
 "District #2 includes 9,984 people from Arkansas City plus 2,126 people from six rural townships. The rural townships lie east and west along the entire south boundary of the county. The district has a total population of 12,110 people. This is 297 persons more than the goal of an ideal district.
 "District #3 includes 3,337 people from Winfield, 4,077 people from Arkansas City and 4,389 people from ten rural townships. These rural townships lie in an el shape along the west and north boundaries of the county. The district has a total population of 11,803 people. This is only 10 persons less than the goal of an ideal district."[10]
At the time these member districts were drawn, Arkansas City had expanded southward towards the Arkansas River. The expansion resulted in three pockets of a precinct that had encompassed Arkansas City being compressed between the City's southern boundary and the Arkansas River. The pockets and the remaining portions of the precinct encompassing Arkansas City to the east, north and west were apportioned to District No. 3, forming a member district that included noncontiguous territory. The City of Arkansas City was divided between two member districts with the southern portion of the City, including those precincts and wards that bordered the river and encompassed the three pockets of township territory, being included in District No. 2 to the south.[11]
The Court noted that there was no specific requirement that the member districts of a board of county commissioners be composed of territory that is contiguous.[12] It was further noted that any attempt to draw the boundaries for the member districts of the Cowley County Commission so that the pockets were included with contiguous territory in one member district would result in two problems: (1) The "equal population" standard would be violated; and (2) the resulting member district would be encompassed by the other two member districts "as a persimmon surrounds its seeds," an arrangement that was deemed unsatisfactory when considering the obligation of a county commission to oversee a county highway program.[13] The Court upheld the member districts against assertions that the member districts failed to meet the statutory obligations of compactness and equality in population.
Member districts of a governing body are considered compact when the boundaries of the member districts are drawn so as to include areas that are "closely united, territorially."[14] The requirement that member districts of a governing body be compact is intended to prevent political gerrymandering.[15]
 "[I]n determining whether there has been compliance with the mandatory compactness requirement, due consideration must be afforded, as the cases almost uniformly recognize, to the `mix' of constitutional and other factors which make some degree of noncompactness unavoidable, i.e., concentration of people, geographic features, convenience of access, means of communication, and the several competing constitutional restraints, including . . . due regard for natural and political boundaries, as well as the predominant constitutional requirement that districts be comprised of substantially equal population."[16]
A violation of the requirement that member districts be compact generally requires "an affirmative showing . . . that such districts were intentionally so drawn to produce an unfair political result, that is, to dilute or enhance the voting strength of discrete groups for partisan political advantage or other impermissible purposes."[17] "The duty of determining how nearly the proposed districts shall approximate equality in population and compactness of territory is vested in the board of county commissioners."[18] "The legislature has placed the discretion in the board of county commissioners and left it with the board to finally determine whether a district is as compact as it could or should have been made."[19] The member districts should be upheld unless an abuse of that discretion by a board can be shown.[20]
It is our understanding that the Board of County Commissioners of Russell County drafted the member districts in the present form in order to comply with the equal population requirement for districting. None of the member districts act as a "persimmon" by encompassing other member districts. Because there is no statutory requirement that the territory of member districts of a board of county commissioners be contiguous, the member districts drafted by the Board of County Commissioners of Russell County do not facially violate state statutes. We have been presented with no information indicating that the Board has abused its discretion in drafting the boundaries of its member districts. Under the circumstances presented, the member districts drafted by the Board of County Commissioners of Russell County comply with state law.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Justice v. Bd. of County Comm'rs of Wyandotte County,17 Kan. App. 2d 102, 107 (1992). See K.S.A. 2001 Supp. 19-204; K.S.A. 19-219.
[2] K.S.A. 2001 Supp. 19-204(a) (emphasis added). In addition, the boundaries of the county commissioner districts must follow the boundaries of voting precincts. Andrews v. Bd. of County Comm'rs ofCowley County, 207 Kan. 548, 550 (1971). See also Justice,17 Kan. App. 2d at 110.
[3] 42 U.S.C.A. §§ 1973 et seq.
[4] See Hayes v. Rogers, 24 Kan. 143 (1880); Keating v. Marble,39 Kan. 370 (1888). See also K.S.A. 18-101 et seq.
[5] See State ex rel. v. Bd. of County Comm'rs of Osage County,112 Kan. 256, 257 (1922); Justice, 17 Kan. App. 2d at 107.
[6] Id.
[7] Osage County, 112 Kan. at 256, Syl. ¶ 4.
[8] See Justice, 17 Kan. App. 2d at 110 (equal in population; splitting wards permitted); State ex rel. Mitchell v. Bd. of County Comm'rs of RenoCounty, 158 Kan. 573 (1944) (population disparity); State ex rel. v. Bd.of County Comm'rs of Montgomery County, 125 Kan. 379 (1926) (population disparity); State ex rel. v. Jones, 114 Kan. 726 (1923) (population disparity).
[9] 207 Kan. 548 (1971).
[10] Id. at 550-51.
[11] Id. at 552.
[12] Id. at 553.
[13] Id.
[14] Matter of Legislative Districting of State, 475 A.2d 428, 437,443 (Md. 1984).
[15] Id. at 436-37, 443.
[16] Id. at 443. See also Beaubien v. Ryan, 2001 WL 1654767 (Ill., Dec 27, 2001).
[17] Matter of Legislative Districting of State, 475 A.2 at 443.
[18] State ex rel. v. Board of County Commr's of Osage County,112 Kan. 256, 258 (1922).
[19] Id. at 262.
[20] Id. at 258.